NAIL *et al. v.* NAIL *et al.*

No. 17151. July 12, 1950.

*Bennett, Pedrick & Bennett,* for plaintiffs.

*J. H. Highsmith, M. C. Grainger,* and *E. Way Highsmith,* for defendants.

CANDLER, Justice. Maria L. Nail, a resident of Appling County, died during November, 1932, intestate. She was survived by her husband, J. W. Nail, eight children, and several grandchildren, the children of a deceased daughter. J. W. Nail died, intestate, February 29, 1948, and a resident of Appling County at the time of his death. On April 3, 1948, Don C. Nail and several others, alleging themselves to be some of the children and grandchildren of J. W. Nail and Maria L. Nail, filed a suit in the Superior Court of Appling County against John A. Nail, Hovis C. Nail, H. Ford Nail, Mrs. Suveda Swymer, and Colleen Whitten, a minor, as the other children and grandchildren of J. W. Nail and Maria L. Nail. John A. Nail, as temporary administrator of the estate of J. W. Nail, was made a party defendant after the allowance of an amendment alleging that he was in such capacity a necessary party. Briefly, as thus amended, their petition alleged: Maria L. Nail, at the time of her death in 1932, owned two tracts of land in Appling County, Georgia, one of which tracts contained 459 acres, more or less; the other, 98 acres, more or less, and title to them passed upon her death to her heirs at law, namely, her husband, J. W. Nail, and the parties to this proceeding, J. W. Nail taking an undivided one-tenth interest, which afterwards upon his death intestate passed to the petitioners and defendants. J. W. Nail was allowed to live on the land and have the rents and profits from it after the

death of Maria L. Nail until his death in 1948. During his life, and on June 7, 1946, J. W. Nail leased to two of his sons, John A. Nail and Hovis C. Nail, for a term of ten years, computed from January 1, 1946, the 459-acre tract of the Maria L. Nail lands. The lease authorized them to cultivate all of the tract suitable for farming, and to operate the timbered part of it for turpentine, pulpwood, and sawmill purposes. During his life they were required by the lease contract to pay him stipulated amounts for the rights granted, and it further provided that, in case of his death before the expiration of the lease, they were to pay his funeral expenses and the taxes annually on the leased property. The petition further alleged that the lease was, for several reasons, null and void and therefore should be canceled.

General and special demurrers were interposed to the petition, and, subject thereto, the defendants jointly answered. The court sustained the first four grounds of the demurrer and overruled the remaining grounds. To that portion of the judgment on the demurrer which was adverse to the petitioners, they excepted pendente lite.

The petitioners then offered a second amendment to their petition, in which it was in substance alleged: Maria L. Nail acquired title to tract number two—the 98-acre tract as described in the petition—from R. R. Wells by deed dated November 12, 1925, and recorded in Appling County on the same day. J. W. Nail purchased tract number one—the 459-acre tract described in the petition—from S. A. Crosby by warranty deed, dated September 21, 1897. J. W. Nail became financially involved in 1923, his cousin Oscar Nail paid items of indebtedness for him, amounting to the aggregate sum of $2526; and as an inducement and consideration for the loan, it was agreed between J. W. Nail and Oscar Nail that thereafter the equity in J. W. Nail's 459-acre tract and the beneficial ownership of it should be the property of Maria L. Nail, subject only to Oscar Nail's loan deed for the amount advanced to J. W. Nail for the purpose of paying his indebtedness. In consequence of the agreement between J. W. Nail and Oscar Nail, an implied trust arose in favor of Maria L. Nail, though no deed for the land in question was ever actually made to her, and thereafter J. W. Nail held the legal title for said tract of land in trust for her. The amendment then

alleges a series of facts occurring after the agreement between J. W. Nail and Oscar Nail, which the petitioners contend estop the defendants from disputing the title of Maria L. Nail for said tract of land. The petitioners also offered a third amendment to their petition, alleging further facts in support of their contention that the defendants are estopped to dispute the title of Maria L. Nail for the 459-acre tract involved.

Voluminous objections were interposed to the allowance of the two proffered amendments. However, they are in substance these: (1) The amendments offered show that J. W. Nail's title for tract number one, the 459-acre tract, did not pass to Maria L. Nail, the agreement between J. W. Nail and Oscar Nail, as relied upon, being insufficient in law to pass either legal or equitable title for the land in question to her; and (2) estoppel can not be the basis of title to land, since estoppels are defensive rather than creative. The objections were sustained, the proffered amendments disallowed, and the petitioners excepted pendente lite.

When the case was called for trial, counsel for the petitioners made this announcement: "Your Honor, the plaintiffs in this case are not in a position to proceed with the trial of this case, because the court on March 11, 1950, disallowed plaintiffs' amendments numbers 2 and 3, which amendments alleged the facts upon which the plaintiffs base their action; and the disallowance of these amendments makes it impossible for the plaintiffs to present to the court and jury the issues upon which the plaintiffs' action is based. Plaintiffs are not now asking for a continuance, because the orders of the court disallowing their proposed amendments have entered into and affected the further progress and final result of the case, and it is impossible for the plaintiffs to make out the case which they contend they are entitled to present, because of the action of the court in disallowing the proposed amendments to plaintiffs' petition." The petitioners then declined to offer testimony in support of their cause. The defendants introduced in evidence a warranty deed from S. A. Crosby to J. W. Nail, dated September 21, 1897, conveying to him the 459-acre tract described in the petition; also the lease contract of June 7, 1946, from J. W. Nail to John A. and Hovis C. Nail. And on motion therefor, the court then

directed a verdict for the defendants and entered a final judgment in the case decreeing: (1) that a fee-simple title to the 459-acre tract described in the petition belonged to J. W. Nail at the time of his death; and (2) that the lease contract from J. W. Nail to John A. and Hovis C. Nail of June 7, 1946, was a good and valid lease, and that the lessees were entitled to the possession of the property embraced therein and to the enjoyment of all of the rights and privileges granted by it.

No motion for a new trial was made; but in a direct bill of exceptions to this court error was assigned on the judgment sustaining grounds 5, 6, 7, 8, and 9 of the defendants' demurrer to the petition; the judgment disallowing amendments 2 and 3 as offered to the petition; and on the verdict and final judgment. It is recited in the bill of exceptions: "To the action of the court in permitting verdict for the defendants to be rendered and in entering judgment for the defendants, the plaintiffs excepted, now except, and assign the same as error as being contrary to law, because, having disallowed their amendments 2 and 3, which amendments set forth the facts upon which the plaintiffs based their action, and such rulings being controlling, as plaintiffs contend, which entered into and affected the further progress and final result of the case, the court erred in permitting said verdict to be rendered and said judgment to be entered, and the plaintiffs say that said verdict and judgment constituted an illegal termination of the case."

No motion has been made to dismiss the writ of error for lack of jurisdiction, but it is always the duty of this court, with or without motion, to consider the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such. *Brockett* v. *Maxwell*, 200 *Ga.* 38 (35 S. E. 2d, 906); *Dade County* v. *State of Georgia*, 201 *Ga.* 241 (39 S. E. 2d, 473). As will appear from the foregoing statement, there was no motion for new trial in this case, the contention being that the verdict and final judgment were controlled adversely to plaintiffs in error by antecedent rulings. The Code, § 6-804, declares: "In any case where the judgment, decree or verdict necessarily has been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling,

order, decision, or charge of the court, it shall not be necessary to make a motion for new trial, nor file a brief of the evidence, but the party complaining shall be permitted to present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the appellate court to clearly understand the ruling, order, decision, or charge complained of." In *Western & Atlantic R. Co.* v. *Callaway*, 111 *Ga.* 889 (36 S. E. 967), this court said: "When a party against whom a verdict has been rendered, without moving for a new trial, sues out a direct bill of exceptions, he must, in order to obtain a reversal of the judgment, show not only that error was committed, but also that the adverse verdict was a necessary result thereof." "In order that a reversal may be had where a case is brought to this court, not as a whole, or after a motion for a new trial has been made and overruled, but by direct bill of exceptions, merely bringing up and assigning error on particular rulings, it must appear that 'the judgment, decree, or verdict has necessarily been controlled'—not possibly affected, but necessarily controlled—by such rulings." *Anderson* v. *Wyche*, 126 *Ga.* 393, 397 (55 S. E. 19). Mr. Justice Grice, speaking for the court in *Federal Land Bank of Columbia* v. *United States Fidelity &c. Co.*, 188 *Ga.* 138 (2 S. E. 2d, 916), said: "In order to come within the provision of the Code, § 6-804, the rulings on the demurrer must not only have in some degree entered into and affected the further progress of the case, but must have been such rulings as necessarily controlled the verdict and final decree. 'It is not every error, but only necessarily controlling rulings which may be segregated from the case, stripped from their surroundings, and brought to this court alone as successful grounds for reversal.'" See also *Ray* v. *Morgan*, 112 *Ga.* 923 (38 S. E. 335); *Cable Co.* v. *Parantha*, 118 *Ga.* 913 (45 S. E. 787); *Henderson* v. *State*, 123 *Ga.* 739, 749 (51 S. E. 764). And before the provisions of the Code, § 6-804, are applicable, the record, of course, must show that the antecedent ruling complained of necessarily controlled the verdict and final judgment; a mere recital of such a contention in the bill of exceptions is not alone sufficient to confer jurisdiction on this court to consider and determine the question presented by the writ of error. *Johnson* v. *Pullen*, 45 *Ga. App.* 171 (164 S. E. 162); *Anderson* v. *Wyche*, supra.

In the present case, as shown by our report of the facts, the court overruled a general demurrer to the plaintiffs' petition, and by so doing said in effect that the pleader's allegations were sufficient to state a cause of action for the relief sought. True it is he sustained several special demurrers to the petition, and while the plaintiffs in error have excepted to the latter ruling, they, nevertheless, do not contend that the verdict and final judgment were controlled thereby. We therefore move on to a consideration of the two amendments offered to the petition which were disallowed by the court, these being the adverse rulings which the plaintiffs in error contend were controlling and entered into and affected the further progress and final result of the case. As shown, the original petition alleges: that Maria L. Nail, at the time of her death in 1932, owned a tract of land in Appling County, containing 459 acres, more or less; that J. W. Nail, her surviving husband, leased it on June 7, 1946, to two of the defendants, namely, John A. Nail and Hovis C. Nail, for a period of ten years; that the lessor at the time of the lease had no title to the leased property except that undivided one-tenth interest in the same which he took by inheritance as an heir at law of his deceased wife, Maria L. Nail; and that the lease contract should for that reason, among others, be canceled. The first amendment disallowed by the court, which is referred to in the record as "Plaintiffs' amendment No. 2," alleges that J. W. Nail acquired the 459-acre tract in question on September 21, 1897, from S. A. Crosby, and that his title for it passed to and became vested in Maria L. Nail on April 17, 1923, as a legal result of the following: J. W. Nail became financially involved in 1923; he borrowed $2526 from his cousin, Oscar Nail, and as an inducement and consideration for the loan, he agreed with Oscar Nail that the equity in said land and the beneficial ownership thereof should thereafter be the property of Maria L. Nail, subject only to Oscar Nail's loan deed for the amount advanced J. W. Nail for the purpose of paying his indebtedness; and that, in consequence of the agreement between J. W. and Oscar Nail, an implied trust arose in favor of Maria L. Nail, and J. W. Nail thereafter held the legal title for said land in trust for her benefit. By the remaining allegations of the amendment, and by those of a later amendment, referred to in the record as "Plain-

tiffs' amendment No. 3," the pleader set up at great length acts and conduct of J. W. Nail respecting the land in question, for the purpose of showing that he recognized the equitable title of Maria L. Nail for said tract of land after the agreement with Oscar Nail of April 17, 1923, and thereby estopped himself, and those claiming under him, from disputing her equitable title therefor. We do not think that it is at all necessary to lengthen this opinion further by any extended discussion of the law involving trusts—it being sufficient in this case to say that the pleaded facts are insufficient under the provisions of the Code, § 108-106, to raise an implied trust, as contended. *Pierce* v. *Harrison*, 199 *Ga.* 197 (4) (33 S. E. 2d, 680) ; *Holmes* v. *Holmes*, 153 *Ga.* 790 (113 S. E. 81) ; *Davis* v. *Davis*, 88 *Ga.* 191 (14 S. E. 194). Furthermore, estoppel can not be the basis of title to land, since estoppels are defensive rather than creative. *Alsobrook* v. *Taylor*, 181 *Ga.* 10 (3) (181 S. E. 182) ; *Latham* v. *Fowler*, 199 *Ga.* 648 (34 S. E. 2d, 870). It therefore follows from what has just been ruled that the verdict and final judgment in this case were not necessarily controlled by the rulings complained of, and it makes no practical difference, whether, under the record, the proper judgment to be rendered is one of affirmance or dismissal. The result is the same. Compare *Federal Land Bank of Columbia* v. *U. S. Fidelity and Guaranty Co.*, supra, and cases there cited.

*Judgment affirmed. All the Justices concur.*