S01A1177. MITCHELL et al. v. MITCHELL et al.
(555 SE2d 436)

THOMPSON, Justice.

Gene Mitchell owned land in Lamar County. He died in 1991. Seven years before his death, Gene drew a diagram of the property showing how he intended to divide it equally among his children. Pursuant to that diagram, Gene deeded five acre parcels of land to each one of his five children. Thereafter, Gene showed Richard the land upon which he wanted Richard to build a house. Richard built a house on the parcel of land which his father showed him. Gene and some or all of Richard's siblings helped Richard build the house; no one ever told Richard to stop building the house.

A few months after Gene died, Richard's siblings claimed that Richard built his house on the wrong lot. They filed suit in 1997 against Richard and his wife for declaratory and equitable relief. Defendants counterclaimed for damages to be awarded in the "enlightened conscience" of the jury.

At trial, plaintiffs established that the house was not built on the land which was deeded to Richard. Nevertheless, the jury rendered a verdict giving defendants (1) the property upon which Richard built the house and (2) the sum of $1,000, or the amount of taxes which Richard paid on the parcel of land he was deeded,[1] whichever is greater. The verdict was made the judgment of the court. Following the denial of their motion for a new trial, plaintiffs appeal.

---

[1] Richard testified that he paid property taxes on the parcel of land he was deeded, as well as the parcel of land upon which he built his house, but he did not give specifics as to the amounts he paid on either parcel.

1. Under the peculiar circumstances of this case, it cannot be said the court erred in awarding defendants the property upon which the house was built and now stands. See generally OCGA § 23-1-3. After all, this is not a case in which both parties are equally blameless. Cf. *Miceli v. Riley*, 436 NYS2d 72 (1981). Although plaintiffs did not know that Richard built his house on the wrong lot, they were not prevented from ascertaining that fact; they participated in the construction of the house and made no complaint about its location until Gene, their father, died; then they waited nearly six years to file suit for declaratory and equitable relief. Given plaintiffs' failure to act in an appropriate and timely manner when they knew, or should have known, that Richard's house was built on the wrong lot, we believe that the trial court, in the exercise of its inherent equity power, see generally *Hague v. Pitts*, 262 Ga. 777 (425 SE2d 636) (1993), chose the most equitable solution to this conflict.

The trial court's solution is not antagonistic to the law. Compare *Dolinger v. Driver*, 269 Ga. 141 (4) (498 SE2d 252) (1998). It simply provides a just solution to a case in which the legal remedy, if one exists,[2] is not " 'as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.' " *Sherrer v. Hale*, 248 Ga. 793, 797 (2) (285 SE2d 714) (1982).

2. An award of damages cannot be based on speculation, conjecture, or guesswork. *Turner v. Connor*, 192 Ga. App. 348 (385 SE2d 19) (1989). The award of damages in this case is not supported by the evidence and must be reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Sears, P. J., Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, concurring in part and dissenting in part.

Even though the property awarded to the defendants was not conveyed by deed to Richard Mitchell, the majority affirms the award by relying on the principle that equity jurisdiction "is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done." OCGA § 23-1-3. However, "[e]quity is ancillary, not antagonistic, to the law; hence, equity follows the law where the rule of law is applicable and follows the analogy of the law where no rule is directly applicable." OCGA § 23-1-6. Indeed, "[t]he rule that equity follows the law has become the first maxim of equity ([cit.]), and it can not override the positive enactments of the statutes." *Lewis v. Bd.*

---

[2] Inasmuch as OCGA § 44-11-9 does not expressly apply to this case, its application in this case would necessitate the use of equitable principles. See *Beavers v. Weatherly*, 250 Ga. 546, 548 (299 SE2d 730) (1983).

*of Education*, 183 Ga. 687, 690 (1) (189 SE 233) (1936). The majority itself cites a recent decision from this Court which states and elaborates upon this principle:

> Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. "Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity." [Cit.] Although equity does seek to do complete justice, OCGA § 23-1-7, it must do so within the parameters of the law.

*Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998).

As the majority admits, "[a]t trial, plaintiffs established that the house was not built on the land which was deeded to Richard." The defendants have not ever claimed, or presented any evidence, that Gene Mitchell, or other family members after his death, made a parol gift of the property on which the house was built. Compare *Barfield v. Hilton*, 238 Ga. 150 (231 SE2d 755) (1977); *Ryder v. Schreeder*, 224 Ga. 382, 384 (2) (162 SE2d 375) (1968). The defendants also have never made, nor could they make, a claim that the voluntary deed naming Richard as grantee should be reformed to describe the land on which he built. See *Sorrells v. Smith*, 227 Ga. 262, 264 (180 SE2d 238) (1971); *Turner v. Newell*, 129 Ga. 89, 90 (2) (58 SE 657) (1907); *McClure v. Turner*, 165 Ga. App. 380, 381 (301 SE2d 304) (1983).

To support their claim of title to the property in question, the defendants relied upon the theories of adverse possession and equitable estoppel, and the trial court charged the jury with respect to these theories. As for adverse possession, "[t]he same certainty of description which is requisite to constitute an instrument a conveyance of title is required in an instrument which is relied on as color of title. [Cits.]" *Mull v. Allen*, 202 Ga. 176, 179 (42 SE2d 360) (1947). The courts cannot extend the description in a deed introduced as color of title " 'beyond its terms because of a belief by the holder under it that it covered land not embraced in that description, nor because of any unexpressed intention in the mind of the grantor that it should cover land not described in the deed itself.' [Cit.]" *Luttrell v. Whitehead*, 121 Ga. 699, 702 (1) (49 SE 691) (1905). See also *Williamson v. Tison*, 99 Ga. 791 (1) (26 SE 766) (1896). Because the disputed property simply is not described in the deed to Richard, the defendants cannot successfully claim prescriptive title by adverse possession under color of title for seven years. Instead, they are relegated to a claim of prescriptive title by adverse possession for 20 years. OCGA §§ 44-5-163, 44-5-164; *Roe v. Doe*, 233 Ga. 691, 693 (212 SE2d 854) (1975). The undisputed evidence showed that the defendants did not

begin living on the property and improving it until 1988 and "thus prescriptive title has not ripened therefrom." *Roe v. Doe*, supra. Not only does the evidence show an absence of prescriptive title, the plaintiffs are not estopped from asserting title. "One who has title to land and sees another who is in bona fide possession thereof place valuable improvements thereon, without giving notice of his title, is not thereby subsequently estopped from asserting his title." *Kemp v. Hammock*, 144 Ga. 717, 718 (4) (87 SE 1030) (1916). See also *Owen v. Miller*, 209 Ga. 875, 876 (1) (76 SE2d 772) (1953). "Furthermore, estoppel can not be the basis of title to land, since estoppels are defensive rather than creative. [Cits.]" *Nail v. Nail*, 207 Ga. 171, 177 (60 SE2d 749) (1950). Thus, no basis exists for awarding title to the defendants. General equitable principles cannot furnish the sole justification for an award of real property.

> Equity will not, at the instance of one in possession of land, afford affirmative relief, such as the cancellation of deeds as clouds upon title, or the grant of an injunction against interference with his possession, where it appears that he has no title and his only relation to the property is possession acquired under such circumstances as that no prescription could be based thereon.

*State Highway Dept. v. Harris*, 214 Ga. 521, 523 (106 SE2d 19) (1958). See also *Crawford v. Crawford*, 143 Ga. 310 (85 SE 192) (1915).

Therefore, I dissent to the affirmance of that portion of the trial court's judgment which awards the property to the defendants. Accordingly, the judgment reimbursing the defendants for taxes paid on the land which actually was deeded to Richard should not stand, and I concur in the majority opinion to the extent that it reverses the award of damages. However, the majority has disregarded the rule stated in OCGA § 44-11-9 (a) that "a defendant who has a bona fide possession of land under an adverse claim of title may set off the value of permanent improvements against mesne profits and recover the excess of the value of the improvements over the profits." *Beavers v. Weatherly*, 250 Ga. 546, 548 (2) (299 SE2d 730) (1983). Even if this action is not strictly one for recovery of land to which OCGA § 44-11-9 explicitly applies, " 'the equity rule does not differ essentially from the statutory rule.' " *Beavers v. Weatherly*, supra at 548 (2). Thus, application of this rule of equity is appropriate here. Unlike the majority's broad application of its own notions of general equity, the equitable counterpart to OCGA § 44-11-9 is not an instrument for awarding title for which there is not any basis in law. Furthermore, neither the absence of color of title nor negligence in locating the

property described in the deed under which defendants claim prevents them from recovering the value of the house. *Walton v. Sikes*, 165 Ga. 422, 423 (3) (141 SE 188) (1927). This case should be remanded for a determination of the value of the improvements and the most equitable means for compensating the defendants to the extent that such value may exceed any profits which they have received from the property. *Beavers v. Weatherly*, supra at 549 (2). Although OCGA § 44-11-9 may not expressly apply to this case, that statute "is a well-conceived procedural scheme for resolving similar controversies. [Cits.]" *Ross v. Lowery*, 249 Ga. 307, 308 (4) (290 SE2d 61) (1982). If the question of improvements were placed before a jury on remand, "it would be advisable to submit all material issues in accordance with this statute." *Ross v. Lowery*, supra at 308 (4). See also *Claxton v. Claxton*, 214 Ga. 715, 719 (2) (107 SE2d 320) (1959). Those issues are accurately set out in *Archer v. Newkirk*, 167 Ga. App. 54 (306 SE2d 52) (1983).

Although the defendants are entitled to relief, title to the property remains in others. Defendants are relegated to a monetary recovery under OCGA § 44-11-9. The only proper resolution of this unusual case is a total reversal and remand.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED NOVEMBER 19, 2001 —
RECONSIDERATION DENIED DECEMBER 14, 2001.

*Haygood, Lynch, Harris & Melton, C. Robert Melton*, for appellant.

*Martin & Martin, Karen K. Martin*, for appellee.