A00A0208. DUFFY et al. v. THE LANDINGS ASSOCIATION, INC. et al.
(536 SE2d 758)

RUFFIN, Judge.

This case concerns the viability of a restrictive covenant requiring that property owners pay a "transfer fee" to a marketing company upon the sale of their residence. The trial court upheld the covenant and granted summary judgment to defendants, The Landings Association, Inc. and The Landings Company. We reverse because the transfer fee covenant was not properly established in accordance with the amendment provisions of the original covenants.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the nonmovant. Our review is de novo.[1]

The Landings on Skidaway Island is a 4,251-lot residential subdivision in Chatham County. On August 21, 1972, the subdivision

---

[5] *Bd. of Regents &c. of Ga. v. Frost*, 233 Ga. App. 692 (2) (505 SE2d 236) (1998).
[1] *Hansford v. Burns*, 241 Ga. App. 407, 408 (526 SE2d 896) (1999).

developer, The Branigar Organization, Inc., filed a General Declaration of Covenants and Restrictions to run with the land in the subdivision. There were two provisions concerning procedures for amending the covenants.

First, § 11.1, entitled "Duration," provided that the covenants had an initial twenty-year term that would be automatically extended for successive ten-year terms

> unless an instrument signed by the then owners of two-thirds of the lots and living units has been recorded agreeing to *change* said covenants and restrictions in whole or in part; provided, however, that no such agreement of change shall be effective unless made and recorded three years in advance of the effective date of such change, and unless written notice of the proposed agreement is sent to every owner at least ninety days in advance of any action taken.

Second, § 11.4, entitled "Modification," provided that

> [b]y recorded supplemental declaration, the Developer may modify any of the provisions of this Declaration or any Supplemental Declaration for the purpose of clarifying any such provisions, provided no such modification shall change the substantive provisions of any such document or materially alter the rights of any owner established by any such document.

On May 10, 1996, Branigar filed a Supplemental Declaration to the General Declaration of Covenants and Restrictions that purported to clarify §§ 11.1 and 11.4 of the original covenants. The Supplemental Declaration amended § 11.1 to address the duration of the covenants only, not the amendment process. The new § 11.1 stated that the covenants would be automatically renewed for successive ten-year periods

> unless an instrument signed by the then owners of two-thirds of the lots and living units has been recorded agreeing to *terminate* said covenants and restrictions in whole or in part; provided, however, that no such agreement of termination shall be effective unless made and recorded at least three years in advance of the effective date of such termination, and unless written notice of the proposed agreement is sent to every owner at least 90 days in advance of its recording.

(Emphasis supplied.) The Supplemental Declaration also amended

§ 11.4 to add the following language:

> Except as otherwise specifically provided above . . . this Declaration may be amended only by an instrument signed by the then owners of at least two-thirds of the lots and living units or in the alternative, an instrument signed by the President and Secretary of [TLA] certifying that the amendment has received the affirmative vote or written consent, or any combination thereof, of the then owners of at least two-thirds of the lots and living units.

The Supplemental Declaration left intact the provision in § 11.4 of the original covenants allowing the developer to modify the covenants for the purpose of clarification.

On December 10, 1997, Branigar recorded a Restated General Declaration of Covenants and Restrictions. The restated covenants implemented the changes to the termination and amendment procedures that were in the Supplemental Declaration and are quoted above. The restated covenants also provided that any amendments approved by two-thirds of the owners would become effective upon recording, unless a later date was specified.

The owners subsequently approved, by a majority greater than two-thirds, a Supplemental Amendment to the restated covenants. This amendment authorized the creation of a marketing company to promote the subdivision on the regional and national level. The amendment also established a transfer fee, payable to the marketing company, of up to one percent of the gross sales price of property in the subdivision. The amendment was recorded on December 30, 1997, and it did not provide for a delayed effective date.

Robert J. Duffy and Mary C. Duffy purchased a residence in the Landings on March 30, 1997. They sold the property on June 25, 1998. On the date of closing, the Duffys filed this action seeking a declaration that the one percent transfer fee was invalid.[2]

Pretermitting whether the transfer fee amendment violated OCGA § 44-5-60 (d) (4),[3] we hold that the amendment did not apply to the Duffys because it was not enacted in conformance with the applicable modification procedures. Because restrictive covenants

---

[2] The Duffys later paid an amount equal to one percent of the purchase price into the registry of the court.

[3] That Code section states:
Notwithstanding any other provision of this Code section or of any covenants with respect to the land, no change in the covenants which imposes a greater restriction on the use or development of the land will be enforced unless agreed to in writing by the owner of the affected property at the time such change is made.

are simply specialized contracts that run with the land,[4] we begin by looking at the language of the covenants in question. In so doing, we bear in mind that "[s]ince restrictions on private property are generally not favored in Georgia, they will not be enlarged or extended by construction, and any doubt will be construed in favor of the grantee."[5]

The original covenants established two methods for modifying the covenants: (1) pursuant to § 11.1, two-thirds or more of the owners could vote to change the covenants, but only if the change was recorded three years before its effective date and the owners received notice of the proposed change at least ninety days before "any action taken"; and (2) pursuant to § 11.4, the developer could modify the covenants for the purpose of clarification, but could not substantively alter them or materially alter the rights of the owners under the covenants.

The 1996 Supplemental Declaration to the covenants, which purported to change the procedures for modifying the covenants, did not comply with either of these methods. It did not comply with § 11.1 because it was recorded by the developer, not voted on by the owners; it was not recorded three years in advance of its effective date; and there is no indication that the owners received notice of it ninety days before the developer recorded it. And the Supplemental Declaration did not comply with § 11.4 because, by eliminating the three-year delayed effective date and ninety-day notice provisions pertaining to amendments, it substantively changed the provisions of the covenants and materially altered the rights of the owners thereunder. Therefore, the Supplemental Declaration was ineffective,[6] as was that portion of the restated covenants purporting to implement it. Thus, the modification procedures contained in the original covenants remained operative.

The 1997 amendment establishing the transfer fee, however, did not conform with the modification provisions in the original covenants. Although the transfer fee amendment was approved by the owners of more than two-thirds of the lots in the subdivision, the amendment was not recorded three years before its effective date. Assuming the transfer fee had been enacted consistently with § 11.1 of the original covenants, it would not take effect until 2000 — long after the Duffys sold their property. Thus, the transfer fee did not apply to the Duffys' sale.

The defendants argue that even if the supplemental declarations

---

[4] See, e.g., *Willcox v. Kehoe*, 124 Ga. 484 (52 SE 896) (1905).

[5] (Citation and punctuation omitted.) *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 427 (1) (b) (ii) (532 SE2d 736) (2000).

[6] See, e.g., *Antill v. Sigmon*, 240 Ga. 511-512 (241 SE2d 254) (1978).

and the transfer fee amendment were not adopted properly, the Duffys are nevertheless bound by principles of equity to follow them. Landowners may be bound to uphold legally insufficient covenants under the doctrine of promissory estoppel,[7] which provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[8]

In *Canterbury Forest Assn. v. Collins*,[9] a group of landowners signed an agreement extending the term of restrictive covenants that had expired under the law. Even though the extension agreement was legally ineffective, we held that the landowners, who had continued to abide by and enforce the covenants in reliance on their continued viability, were personally bound to comply with the restrictive covenants in the agreement that they had executed. Here, however, the Duffys never signed, voted for, or otherwise agreed to the 1996 Supplemental Declaration purporting to change the amendment process, and they actively opposed the 1997 transfer fee amendment. The defendants point out that the Duffys had notice of the Supplemental Declaration when they purchased the property and that purchasers who have notice of valid recorded covenants may be bound by those covenants even though they do not run with the land.[10] But the Supplemental Declaration was ineffective from the outset because it was not adopted in conformity with the procedures set forth in the original covenants. The Duffys cannot be bound by a legally ineffective covenant to which they never agreed.

Because the transfer fee did not apply to the Duffys' sale, the trial court erred in granting summary judgment to the defendants. We therefore reverse.[11]

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 30, 2000 —
RECONSIDERATION DENIED JULY 14, 2000 ▮

*Duffy & Feemster, Dwight T. Feemster*, for appellants.
*Ranitz, Mahoney, Coolidge & Mahoney, Thomas J. Mahoney, Jr.*,

---

[7] See *Canterbury Forest Assn.*, supra at 427 (2).
[8] OCGA § 13-3-44 (a).
[9] Supra at 427 (2).
[10] *Timberstone Homeowner's Assn. v. Summerlin*, 266 Ga. 322, 323-324 (467 SE2d 330) (1996) (properly recorded restrictive covenant to pay maintenance fees was binding on subsequent purchaser with notice, even though not stated in his deed).
[11] In view of our decision herein, we need not address the Duffys' remaining enumeration of error.

*Thomas J. Mahoney III, Mary K. Hogan, John H. Oldfield, Jr.*, for appellees.