A05A2101, A05A2114. CRAWFORD et al. v. DAMMANN et al.;
and vice versa.
(626 SE2d 632)

MIKELL, Judge.
Appellants/cross-appellees are Starfirst Homes, Inc. ("Starfirst"), and its owner and president, David Crawford, each of whom own property and build homes in the Turtle Cove subdivision in Jasper County. Appellees/cross-appellants are members of the board of directors (the "Board") of the Turtle Cove Property Owners Association, Inc. (the "Association"), a nonprofit corporation responsible for managing and maintaining the subdivision, including its closed-end water supply system and all common property in the subdivision. To carry out its responsibilities, the Board levied certain assessments and charges upon the property owners in the subdivision. The charges included a $3,000 building deposit obtained from owners initiating new construction; $100 administrative processing fee for building permits; a ready to serve ("RTS") fee of $70 per residential lot per year for the availability of water service; and a water meter fee of $1,350 for each water meter installed by the Board for each newly developed lot and lots to be developed or built upon.

On March 3, 2003, Crawford sued appellees for declaratory judgment, injunctive relief and damages, requesting the trial court: (1) to determine whether the Declaration of Covenants and Restrictions ("Covenants") authorized the Board to assess and levy the various fees upon him; (2) to issue injunctive relief in the form of a restraining order, temporary injunction, or permanent injunction prohibiting the Board from assessing and levying fees upon him or any of his property; (3) to issue both a temporary and permanent injunction prohibiting the Board from denying water service or refusing to supply water or a water meter at actual cost to any of the lots or properties owned by Crawford; and (4) to issue both a temporary and permanent injunction prohibiting the Board from interfering with or otherwise impeding the development and occupancy of any of the lots or property owned by Crawford. Appellees filed a timely answer to Crawford's complaint.

The case was set for a hearing on the petition for injunctive relief on May 27, 2003, but on May 12, 2003, Starfirst filed a motion to intervene as a party plaintiff on the grounds that it was Starfirst, not Crawford, who owned many of the lots that were subject to the assessments. At the injunctive relief hearing, a consent order was entered and the case was continued.[1] Upon Crawford and Starfirst's compliance with the terms of the consent order, the trial court granted Starfirst's motion to intervene.

On August 6, 2003, Starfirst filed its verified petition for declaratory judgment, which was identical to the averments and prayers for relief in Crawford's complaint. Within 30 days of the date of service of Starfirst's complaint, appellees filed a "first amended answer and defenses." This document listed Crawford as a plaintiff and did not designate Starfirst as a plaintiff.

A second hearing on the claim for injunctive relief was set and again continued based on another consent order reached by the parties. In the second consent order, the Board agreed to suspend collection of the $3,000 building deposit fee during pendency of the litigation in exchange for Crawford and Starfirst agreeing to release the RTS fees from the court registry, agreeing to pay the $100 building permit processing fee, and agreeing to pay the $1,350 water meter installation fee. The parties also agreed to extend the discovery period; and for nine months following the filing of Starfirst's complaint, all parties participated in extensive discovery.

On May 4, 2004, nine months after Starfirst intervened, Starfirst filed its motion for default judgment as well as an amended complaint, which prayed for the recovery of "water usage or consumption fees." Starfirst and Crawford also filed motions for summary judgment. Appellees responded and also filed a motion to open default, an answer to Starfirst's complaint, and a motion for summary judgment. The trial court denied the parties' motions for summary judgment, denied the motion to open default, and entered default judgment against appellees in favor of Starfirst. The court entered a permanent injunction prohibiting appellees from charging Starfirst for the RTS fee, the water meter fee, and the building deposit and permit processing fee. Further, the court found that Starfirst was entitled to a refund of all fees paid to the Board, reserving the issue of Starfirst's damages, costs, and attorney fees for trial.

The case proceeded to a bench trial on all of Crawford's claims and on Starfirst's damages. Following the trial, the court entered

---

[1] The consent order allowed Crawford and Starfirst to pay the disputed RTS fees into the court registry in exchange for the Board's agreement to restore Crawford and Starfirst's voting privileges on the Board.

final judgment in favor of appellees. The court found that the Association was authorized by the Covenants to assess and collect the disputed fees in amounts determined by the Board; that the Association did not abuse its discretion in assessing and collecting those fees from Crawford; that Starfirst did not sustain any damage from the assessment and collection of the fees; and that Crawford and Starfirst received a tangible benefit from the RTS fee and water meter fee by the provision of a private, closed-end water supply system. The court ruled that Starfirst failed to sustain its burden of proving damages and awarded no damages, costs, or attorney fees on the default judgment. In Case No. A05A2101, Crawford appeals the judgment in favor of appellees and Starfirst appeals the judgment awarding no damages. Although we find that the court erred in ruling that the Covenants authorized appellees to collect the building deposit and permit processing fee, we affirm the judgment because appellants failed to prove damages. In Case No. A05A2114, the Board and the Association cross-appeal the default judgment granted to Starfirst. We reverse so much of the default judgment that permanently enjoins appellees from charging Starfirst for the RTS fee, the water meter fee, and the water usage fee, but affirm the remainder of the judgment.

## Case No. A05A2101

1. Crawford and Starfirst ("appellants") argue that the trial court erred in determining that the Association did not abuse its discretion in assessing and collecting the fees at issue. Appellants contend that the Board does not have the inherent authority to create mandatory assessments and that the assessments it levied are illegal because the Covenants do not expressly permit them.

"Restrictive covenants on real estate run with the title to the land and are specialized contracts that inure to the benefit of all property owners affected."[2] "The construction, interpretation and legal effect of [such] a contract . . . is an issue of law" to which the appellate court applies the plain legal error standard of review.[3] Accordingly, we determine de novo whether the trial court correctly ruled that all of the fees at issue were permitted by the Covenants. However, the "any evidence" standard of review applies to nonjury trials of disputed material facts.[4] "In the absence of legal error, an appellate court is

---

[2] *Rice v. Lost Mountain Homeowners Assn.*, 269 Ga. App. 351, 354 (3) (604 SE2d 215) (2004), citing *Duffy v. The Landings Assn.*, 245 Ga. App. 104, 106-107 (536 SE2d 758) (2000).

[3] (Footnote omitted.) *Savannah Jaycees Foundation v. Gottlieb*, 273 Ga. App. 374, 376 (1) (615 SE2d 226) (2005).

[4] See *Netherland v. Nelson*, 261 Ga. App. 765-766 (583 SE2d 478) (2003). Accord *Foster v. Ohlwiler*, 266 Ga. App. 371, 376 (1) (b) (597 SE2d 481) (2004).

without jurisdiction to interfere with a judgment supported by some evidence."[5] Therefore, if we determine the fees are permitted by the Covenants, the court's rulings that the Association did not abuse its discretion in assessing and collecting those fees from Crawford will be upheld if there is any evidence to support them.

(a) We first address the propriety of the judgment as to the RTS fee, the water meter fee, and water usage fees. Paragraph 8.05 of the Covenants, which is entitled "Special Assessments for Services," states:

> The Board may provide for . . . the installation and maintenance of water-supply and sewage-disposal systems, the maintenance of water quality in the bodies of water within and adjacent to the Properties . . . , the protective maintenance of Lots, and similar services. The Board may assess the owners for these services, on the basis of benefits received, and add the charges therefor to the dues.

This provision plainly authorizes the Board to assess fees that are necessary for the maintenance of the Turtle Cove water system. Appellants argue that this provision is invalid because it contains no effective date. Specifically, Paragraph 8.05 states that "no special assessment for services shall commence prior to *(date)*." "[A] contract should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof."[6] The Covenants were recorded on July 29, 1971. According to Paragraphs 8.03 and 8.04, property owners were required to begin paying dues in 1972, and dues could not be increased for the years 1972, 1973, and 1974. It logically follows that special assessments could not be levied prior to 1975. Parol evidence was introduced to show that the effective date of the provision was July 1, 1975. The absence of the date did not render Paragraph 8.05 ineffective.

Appellants next argue that there is no evidence that the owners were assessed for water services "on the basis of benefits received," as contemplated under Paragraph 8.05. We disagree. Testimony indicated that the RTS fee is utilized for maintaining the water system so that when an owner moves in, the water lines are ready to be hooked up. Gregory Marsh Johnson, who has resided in Turtle Cove since 1987 and manages its water department, testified that approximately 860 of the 1,700 lots in the subdivision are metered for water

---

[5] (Citations omitted.) *Netherland*, supra.

[6] (Citations omitted.) *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993). See generally *Southland Dev. Corp. v. Battle*, 272 Ga. App. 211, 213-214 (612 SE2d 12) (2005) (setting out guidelines for construction of restrictive covenants).

service. According to Johnson, the developer installed a 300,000 gallon elevated tank and twenty-seven miles of water lines; the subdivision originally had two wells and now there are ten; and the RTS fee is needed to maintain the water system. Johnson explained that the $1,350 water meter fee covers the meter as well as a service line, a water box and lid, a "back-flow preventer," a meter connector, and the labor involved in the installation, which takes a minimum of four to five hours. He further testified that Turtle Cove's water meter fees were a little less that those charged by the surrounding municipalities.

Appellants argue that, as a matter of law, fees were not assessed "on the basis of benefits received" because there was evidence that the water system generates a substantial profit for the Association. We disagree. Rosemary Dean, a Board member, testified by deposition that in 2002 and 2003, the system produced profits of $242,927 and $192,292, respectively. According to Dean, these profits remain in the general fund to be used for whatever purpose the Board deems fit, such as covering shortfalls in the operation of recreational facilities. However, Dean testified that the water system as a whole generated a profit; she did not attribute the profit to the specific fees at issue. In its findings of fact, the trial court found that the water fees conferred a tangible benefit upon Crawford because they enabled the Association to provide a private closed-end water system. As stated above, there is evidence to support this finding, and it is affirmed.

(b) However, we reach a different result regarding the $3,000 building deposit and $100 processing fee for building permits. Although there was evidence adduced at trial to show that these assessments were reasonable, we disagree with the trial court's conclusion that they were authorized by the Covenants.

Appellees claimed the right to charge the deposit and the fee based on Article 6 of the Covenants, which established an Architectural and Environmental Control Committee (the "Committee") "[f]or the purpose of protecting and preserving the values, amenities and qualities of the development." This Article granted to the Committee "the powers and functions conferred upon it by . . . [the Covenants], as well as such other powers and functions as the Board may confer upon it from time to time." Article 6 further prohibits the commencement of "construction or improvement involving any modification of the overall appearance of any Lot or any area to be developed . . . without a written permit issued by the Committee." The clause requires the owner to submit an application for a permit, including plans that "indicate the extent to which trees are to be cut and the topography of the Lot (area) altered."

Deborah Stevens Dammann, a named defendant and president of the Board from March 2002 to June 2004, testified that builders

had been clear-cutting the lots and that the fee had been raised to $3,000 to deter this action. She further testified that the deterrence had been effective because the deposit was usually refunded. Dammann also testified that when the Board voted to increase the deposit, it instructed the Committee to charge the increased amount.

According to Dean's deposition testimony, the $100 building permit fee is imposed to process the paperwork as well as to pay for the services of a contractor who inspects the property to ensure that the builder is situating the property correctly, is not destroying more than the allotted number of trees, and is complying with all applicable rules and regulations. Dean further testified that the fee is refundable, and that the Board had adopted a schedule of penalties for noncompliance. However, Dean was unable to point to any provision in the Covenants which specifically permits either of these assessments. Moreover, Dean admitted that the Covenants had never been amended.

"[S]ince restrictions on private property are generally not favored in Georgia, they will not be enlarged or extended by construction, and any doubt will be construed in favor of the grantee."[7] Nothing in Article 6 authorizes a building deposit or application processing fee. Paragraph 8.05 allows assessments for "the protective maintenance of Lots, and similar services," but appellees do not contend that a deposit which deters clear-cutting a lot is a "service." In addition, the only other provision in the Covenants that allows special assessments, Paragraph 8.06, permits them for the sole purpose of defraying the cost of capital improvements, and must be approved by two-thirds of the property owners. It is undisputed that the Covenants were not modified to authorize these fees.[8] Thus, construing the Covenants strictly in favor of Crawford, we find that they do not authorize the imposition of the building deposit and processing fee. However, a judgment that is right for any reason will be affirmed.[9] As shown below in Divisions 2 and 3, appellants failed to prove damages. It follows that the judgment need not be reversed.

2. Appellants enumerate as error the trial court's exclusion of evidence of fees paid to the Association. Crawford testified, inter alia, that he paid $5,000 in building deposits and $690 in processing fees. To substantiate this testimony, Crawford proffered a summary of all fees paid as well as handwritten spreadsheets which listed the fees by

---

[7] (Punctuation and footnote omitted.) *Duffy*, supra at 107; accord *Lake Arrowhead Property Owners Assn. v. Dalton*, 257 Ga. App. 655, 656 (1) (572 SE2d 25) (2002).

[8] See *Turtle Cove Property Owners Assn. v. Jasper County*, 255 Ga. App. 560, 562 (566 SE2d 368) (2002) (modification of Turtle Cove covenants requires approval of two-thirds of the property owners).

[9] See *Rowell v. Parker*, 192 Ga. App. 215, 216 (2) (384 SE2d 396) (1989).

category according to lot. Crawford testified that he prepared the summaries "from computer records in the office"; that he had control over those business records; that the summaries were based on his personal knowledge; and that they accurately represented the business records in his office. Appellees objected on the ground that Crawford had failed to lay a proper foundation for the admission of the summaries, and the trial court sustained the objection.

A trial court's decision to exclude an item from evidence will not be disturbed on appeal absent an abuse of discretion.[10] In the case at bar, the court did not abuse its discretion in refusing to admit the summaries under OCGA § 24-3-14, the business records exception to the rule against hearsay evidence.[11] OCGA § 24-3-14 (b) provides:

> Any writing or record, . . . made as a memorandum or record of any . . . transaction . . . shall be admissible in evidence in proof of the . . . transaction, . . . if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the . . . transaction, . . . or within a reasonable time thereafter.

In order for a writing to be admissible under this Code section, "a foundation must be laid through the testimony of a witness who is familiar with the method of keeping records and who can testify thereto and to facts which show that the entry was made in the regular course of a business at the time of the event or within a reasonable time thereafter."[12] Crawford did not testify that the writings he proffered were made in the regular course of his business at the time of the underlying transaction or within a reasonable time thereafter. It follows that the trial court did not abuse its discretion in excluding the summaries in question. Therefore, Crawford did not prove damages resulting from payment of the building fees.

3. Appellants next contend that the trial court erred in ruling that Starfirst failed to sustain its burden of proving damages. Crawford testified, of his own personal knowledge, that Starfirst had paid a combined total of "approximately $101,000" in RTS fees, water meter fees, building deposits, inspection fees, and water usage fees to the Association. Appellees argued that Starfirst had failed to prove damages with a reasonable degree of certainty. In ruling from the

---

[10] See *Massey v. State*, 269 Ga. App. 152, 154 (2) (603 SE2d 431) (2004).

[11] It appears that the trial court also determined that admission of the summaries violated the best evidence rule. We express no opinion on this ruling.

[12] (Citation omitted.) *Suarez v. Suarez*, 257 Ga. 102, 103-104 (2) (355 SE2d 649) (1987); see also *Growth Properties of Fla. v. Wallace*, 168 Ga. App. 893, 898 (3) (310 SE2d 715) (1983).

bench, the trial court stated "I do not find that any damages have been proven. If anything else, I think there's been a benefit conferred." In the final judgment, the court found as a fact that Starfirst did not sustain any compensable damage from the assessment or collection of the fees at issue. We conclude that this finding is not clearly erroneous.

"It is axiomatic that damages cannot be left to speculation, conjecture, or guess-work and must be proven with reasonable certainty."[13] For example, damages in suit on an open account must be proved "in a definite and correct amount."[14] In our view, a prayer for the recovery of specific fees paid by a plaintiff is analogous to seeking recovery on an open account. Applying this standard, Crawford's testimony as to the "approximate" amount of damages suffered by Starfirst is insufficient to prove the amount of fees paid to the requisite degree of specificity. The court's ruling that Starfirst failed to sustain its burden of proving damages is not clearly erroneous.

## Case No. A05A2114

4. In their sole enumeration of error, cross-appellants argue that the trial court abused its discretion in refusing to open the default and in entering default judgment and a permanent injunction in favor of Starfirst.

(a) Cross-appellants first contend that the trial court should have ruled that their amended answer constituted an answer to Starfirst's complaint. We disagree.

It is the substance and function of a pleading that is controlling and not its nomenclature.[15] Examination of cross-appellants' first amended answer reveals that this pleading was intended to function as a response to Crawford's amended complaint and not as an answer to Starfirst's complaint. The pleading listed only Crawford as a plaintiff in the heading as well as in the body. Starfirst was not listed as a plaintiff or referred to by its corporate name at any place in the pleading. The pleading was captioned as a first amended answer and not an answer. Throughout the body of the amended answer, cross-appellants refer to the opposing party in the singular or use the

---

[13] (Citation omitted.) *Kroger Co. v. U. S. Foodservice of Atlanta*, 270 Ga. App. 525, 528 (1) (607 SE2d 177) (2004).

[14] (Citation and punctuation omitted.) Id. See also *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002) (regarding value of timber cut by neighbor, "trier of fact must be able to calculate the amount of the loss from the evidence and 'will not be placed in a position where an allowance of the loss is based on guesswork' ") (footnote omitted). Compare *Mizell v. Spires*, 146 Ga. App. 330, 331-332 (1) (246 SE2d 385) (1978) (plaintiff established amount of lost profits with reasonable certainty).

[15] See *L. Henry Enterprises v. Verifone*, 273 Ga. App. 195, 197 (1) (614 SE2d 841) (2005).

singular possessive "plaintiff's." In the prayer for relief, cross-appellants pray that "[p]laintiff's [c]omplaint . . . be dismissed, with all costs cast against [p]laintiff." Under Code pleading procedures no technical form of pleading is required, and all pleadings shall be construed so as to do substantial justice.[16] But "[l]iberal construction of a pleading does not encompass the imputation or engrafting to a claim of a meaning not reasonably deductible or inferable from the explicit language of the pleading."[17] The reference to only Crawford as the plaintiff, the caption of the pleading, and the repeated reference to plaintiff in the singular throughout the body of the pleading demonstrate the pleading's true substance as an amended answer to Crawford's complaint.[18]

Furthermore, while pleadings are to be construed to do substantial justice, "justice is not obtained when a pleading is so liberally construed as to circumvent its true intent, especially when the opposing party is thereby deprived of a significant statutory right — as in this case, of having default entered."[19] Pleading averments are to be simple, concise, and direct to minimize the risk that an opposing party will be misled either as to the nature or scope of the pleadings.[20] To achieve this goal, this Court normally construes the language of a pleading "according to its literal meaning and giving its words their usual and ordinary significance."[21]

Applying these rules to cross-appellants' amended answer, we conclude that the trial court did not err in construing the pleading as being an amended answer to Crawford's complaint and not an original answer to Starfirst's complaint.

(b) Cross-appellants next contend that the trial court abused its discretion in refusing to open the default pursuant to OCGA § 9-11-55 (b). Again, we disagree.

Under OCGA § 9-11-55 (b), a prejudgment default may be opened on one of three grounds if four conditions are met. The three grounds are providential cause, excusable neglect, and a proper case; the four conditions are a showing made under oath, an offer to plead instanter, an announcement of ready to proceed to trial, and setting up a

---

[16] OCGA § 9-11-8 (e) (1), (f).

[17] (Citation and punctuation omitted.) *McCombs v. Southern Regional Med. Center*, 233 Ga. App. 676, 681 (2) (504 SE2d 747) (1998). Accord *Campbell v. Moody*, 242 Ga. App. 643, 645 (1) (529 SE2d 923) (2000).

[18] Compare *Campbell*, supra.

[19] *McCombs*, supra at 678 (2). Accord *Robinson v. Star Gas of Hawkinsville*, 243 Ga. App. 112, 115 (533 SE2d 97) (2000).

[20] *Robinson*, supra.

[21] (Citation omitted.) See id. Accord *Standridge v. Spillers*, 263 Ga. App. 401, 405 (2) (587 SE2d 862) (2003).

meritorious defense.[22] Starfirst does not contend that cross-appellants failed to meet any of the four conditions. However, "even if a party has met all the prerequisites for opening a default under OCGA § 9-11-55 (b), the trial court has broad discretion in deciding whether or not to open the default, and its decision not to open a default . . . will not be interfered with unless that discretion is manifestly abused."[23]

In the case at bar, cross-appellants first assert that the trial court abused its discretion in failing to open the default on the grounds of excusable neglect. They contend that any neglect in failing to timely answer Starfirst's complaint was excusable because they had timely answered Crawford's complaint and its factual and legal allegations were identical to those in Starfirst's complaint. Cross-appellants also contend that their neglect was excusable given the parties' extended negotiations, entry of consent orders, and prolonged period of discovery. However, there is unrefuted evidence in the record that cross-appellants filed an untimely answer to Starfirst's complaint because they failed to inform their attorney that they had been served with process. A court does not err in finding such neglect inexcusable.

> "[E]xcusable neglect" does not mean "gross negligence," and default should never be opened for capricious or fanciful reasons. [Hence,] if a party, on reading a writ, reaches the wrong conclusion and therefore pays no attention to the process and fails to answer, his neglect is inexcusable and gross, and the trial court has no authority to open a default for reasons which fall short of a reasonable excuse for the negligent failure to answer.[24]

Second, cross-appellants argue that the trial court abused its discretion in failing to open the default on the grounds of "proper case." The "proper case" ground has been construed to confer the broadest discretion upon the trial court, "as if reaching out to take in every conceivable case where injustice might result if the default were not opened, . . . where the judge from all the facts shall determine that a proper case has been made."[25] However, cross-appellants have not included for our consideration a transcript of the hearing held on Starfirst's motion for default judgment. Thus, they

---

[22] *Collier v. Cawthon*, 256 Ga. App. 825, 826 (1) (570 SE2d 53) (2002).

[23] (Citation omitted.) *Daniel v. Causey*, 220 Ga. App. 589 (1) (469 SE2d 839) (1996).

[24] (Citations and punctuation omitted.) *Hendricks v. Hubert*, 158 Ga. App. 371, 372 (3) (280 SE2d 396) (1981).

[25] (Citation and punctuation omitted.) *Colonial Penn Life Ins. Co. v. Market Planners Ins. Agency*, 209 Ga. App. 562, 563 (434 SE2d 124) (1993).

have failed to sustain their burden of proving error affirmatively by the record. "[W]here the transcript is necessary for review and appellant omits it from the record on appeal, the appellate court must assume the judgment below was correct and affirm."[26] In its order granting a default judgment, the trial court specifically recited that it considered the arguments and submissions of counsel in finding that cross-appellants had not made a proper case for opening the default. Such a finding cannot be assailed absent a transcript.

Cross-appellants further contend that the trial court should not have entered default judgment in favor of Starfirst until after the identical claims of Crawford had been adjudicated. Cross-appellants claim they have made a proper case for opening default because the default judgment is inconsistent with the final judgment. In this regard, as part of the default judgment, the trial court entered a permanent injunction prohibiting the assessment and collection of any of the disputed fees against Starfirst, declaring the fees invalid as to Starfirst, and declaring that Starfirst was entitled to a refund of all such fees paid, with the amount to be determined at trial. The final judgment determined that Starfirst did not sustain any compensable damage from the imposition of the fees and that Starfirst received a tangible benefit from the RTS fee and the water meter fee. Accordingly, cross-appellants argue that it is an abuse of discretion for the court to refuse to lift the injunction prohibiting the assessment and collection of the fees after having found that the fees conferred a benefit upon Starfirst.

Cross-appellants' argument is a variant of the defaulting joint defendant rule,[27] which was rejected by the Supreme Court in *Fred Chenoweth Equip. Co. v. Oculus Corp.*[28] According to the now-defunct rule, a court should not enter judgment against a defaulting defendant if claims remain pending against nondefaulting defendants to avoid the absurdity that results when a single issue is decided in conflicting ways in two judgments rendered in one case.[29] In *Chenoweth*, the Court held:

> The default judgment merely determined that [one of three defendants] failed to follow the procedural requirement that a timely answer be filed. The consequence of this failure was that judgment was entered against [that defendant]. . . .

---

[26] (Citation omitted.) *Seay v. Chase Manhattan Mtg. Corp.*, 270 Ga. App. 349 (606 SE2d 586) (2004). Accord *Broadcast Concepts v. Optimus Financial Svcs.*, 274 Ga. App. 632, 634 (1) (618 SE2d 612) (2005).

[27] See *Ga. Farm Buildings v. Willard*, 170 Ga. App. 327, 330-331 (5) (317 SE2d 229) (1984).

[28] 254 Ga. 321 (328 SE2d 539) (1985).

[29] Id. at 322.

Should it be determined [said defendant] has no liability on the contract we view this as neither absurd nor inconsistent with the default judgment against [it]. [This defendant] suffered judgment because of its failure to answer the complaint and was therefore denied an opportunity to litigate the merits. This is no less than and no greater than the harshness existing in a default judgment against a single defendant. The merits are not reached because of the default.[30]

Cross-appellants do not address this argument in their reply brief. Instead, they rely on cases in which we found no abuse of discretion in the trial court's finding of a proper case to open default.[31] For example, in *Colonial Penn Life Ins. Co. v. Market Planners Ins. Agency*, the defendant failed to answer a complaint because a substantially identical complaint was already pending in another jurisdiction and he thought he had already answered the Georgia complaint.[32] The trial court opened the default and we affirmed that judgment, holding that the trial court had not abused its discretion, "but this is clearly not the same as holding that the trial court would have abused its discretion if it had *not* opened the default."[33] In the case at bar, we cannot say that the trial court manifestly abused its discretion in refusing to find that cross-appellants had made a proper case for opening the default.

(c) However, cross-appellants' contention that their failure to answer Starfirst's complaint cannot serve as an admission of the conclusions of law contained therein has merit.

"Although a default operates as an admission of the well-pled factual allegations of the complaint, it does not admit allegations not well pled, forced inferences, or conclusions of law."[34] Further, a default does not preclude a defendant from showing that under the facts deemed admitted, no claim existed which would allow a plaintiff to recover.[35] The relevant facts deemed admitted in Starfirst's complaint are that the Association operates Turtle Cove's private water system; that the Association has assessed Starfirst and other property owners the building deposit and processing fee, RTS fee, water

---

[30] Id. at 323. Accord *Evers v. Money Masters*, 203 Ga. App. 546, 547 (1) (417 SE2d 160) (1992).

[31] See *Vito v. Dhillon*, 269 Ga. App. 899, 903-904 (2) (605 SE2d 602) (2004); *Colonial Penn*, supra at 563.

[32] *Colonial Penn*, supra at 563-564.

[33] (Emphasis in original.) *Daniel*, supra at 590 (1).

[34] (Punctuation omitted.) *Standridge*, supra at 404 (2), citing *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 752 (1) (556 SE2d 517) (2001).

[35] *ServiceMaster*, supra at 752-753 (1).

meter fee, and water usage fee; and that Starfirst owns 71 lots in the subdivision and has been required to pay the fees on the lots which it has already developed. However, the remainder of Starfirst's complaint contains legal conclusions; namely, that the Covenants did not authorize cross-appellants to assess or levy the fees at issue. By defaulting, cross-appellants did not admit these conclusions of law. In Division 1, we ruled that the Covenants authorized the water-related fees but not the building fees. Because the Covenants permitted assessment of the water-related fees, Starfirst could have no claim for the recovery of those fees. Therefore, we reverse that portion of the default judgment which grants Starfirst injunctive and declaratory relief from the assessment and collection of the RTS fee, the water meter fee, and water usage fees, and affirm the injunctive and declaratory relief granted against the assessment of building deposits and processing fees.

*Judgment affirmed in Case No. A05A2101. Judgment affirmed in part and reversed in part in Case No. A05A2114. Andrews, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 2, 2006 — 

*Brian R. Dempsey*, for appellants.

*Weissman, Nowack, Curry & Wilco, Derek W. Johanson, Raymond K. Williams*, for appellees.