**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 2, 2022**

# In the Court of Appeals of Georgia

A21A1601. THE COTTO LAW GROUP, LLC v. BENEVIDEZ.

PINSON, Judge.

An employee abruptly resigned from her position as an associate at a law firm and blocked its access to her firm email account, the firm's fax line, and client files kept in an online Dropbox account. The firm sued her, and the trial court entered a default judgment in its favor after the employee failed to file a timely answer. But the trial court declined to award any damages after a bench trial on that issue, finding that the firm had failed to carry its burden to prove any damages. The firm appealed, contending that the trial court erred by (1) applying the wrong legal standard to its claims for actual damages and declining to award even nominal damages; (2) failing to recognize that the default judgment "conclusively established" the employee's

liability for punitive damages and attorney fees; and (3) denying the firm's right to present closing argument at trial.

We affirm the trial court's judgment except with respect to the attorney fees. The trial court applied the correct legal standard and did not clearly err in finding that the firm failed to establish its actual damages with reasonable certainty. The court also did not err in failing to award nominal or punitive damages. And the court did not commit reversible error by forgoing closing argument. But because the entry of a default judgment required the trial court to award the firm its reasonable attorney fees, the judgment must be reversed to the extent the court failed to make such an award, and the case must be remanded for a determination of the proper amount of the fee award.

## Background

The relevant facts, which are either undisputed or deemed admitted by virtue of the default judgment, see OCGA § 9-11-55 (a),[1] are as follows. The Cotto Law Group is a Duluth law firm specializing in immigration and personal injury law. In 2017, Vanessa Benevidez was hired as an associate attorney to handle the firm's

---

[1] Under this Code section, an entry of default judgment generally has the effect of deeming "every item and paragraph of the complaint" to be "supported by proper evidence." See Division 2 below.

2

personal injury matters. While at Cotto, Benevidez established an account for the firm with Dropbox, an online file-sharing network, to maintain client files. She also arranged for the installation of a fax line for communicating with insurers in these personal injury matters.

In January 2019, Benevidez and Mayra Lazano, a paralegal who worked closely with Benevidez, resigned from their employment with the firm by emailing the firm's principal, Isaac Cotto, notifying him of their immediate resignation.[2] On Benevidez's departure, the firm no longer had access to its Dropbox account, its fax line, or her firm email account.[3] Three days after the resignations, the firm received letters from two clients, terminating the firm's services.

The next day, Cotto filed suit, claiming that Benevidez and Lazano had "converted [its] client files . . . [and] stole[n], tortiously interfered with[,] and

---

[2] Benevidez's email describes her resignation as "forced," as a result of her learning that Mr. Cotto was soliciting job applicants for her position.

[3] Although the verified complaint avers that Benevidez changed the Dropbox and email passwords and "altered the contact information" for the fax line to prevent the firm from accessing these accounts, it is unclear to what extent Benevidez actually altered passwords or other information, as opposed to simply leaving without providing the credentials necessary to access these accounts. Either way, it is undisputed that, at least initially, without Benevidez, the firm was unable to access these accounts.

otherwise obstructed [the firm's] access to its client files" in violation of various Georgia statutes. The complaint sought injunctive relief as well as "compensatory, consequential, special, nominal, punitive, and exemplary damages," and attorney fees under OCGA § 13-6-11.

In the months that followed, the trial court granted Cotto temporary injunctive relief. And although Benevidez appeared at the interlocutory injunction hearing, she failed to file a timely answer.[4] Cotto moved for a default judgment, and, although Benevidez then filed an untimely answer and moved to open the default, the trial court rejected these efforts and granted Cotto's motion for default judgment.

A bench trial on damages followed.[5] Cotto presented two witnesses to testify on damages. First, Cotto called Erika Quiroz, the firm's marketing director, who testified that, as a result of Benevidez's departure and the firm's lack of access to its electronic files, she had to "stay in the office and do office work" instead of her usual business development work outside the office. For roughly a month, Quiroz was sidelined from her marketing duties to help "reorganize . . . the operation of the law firm"; she testified that "there were files everywhere in the office and I had to start

---

[4] Lazano had by that point been dismissed from the case.

[5] Benevidez waived her demand for a jury trial.

4

calling the clients and . . . [let] them know that Ms. Benevidez wasn't there anymore." Quiroz testified that she worked 122 hours on this "reorganization" work and that her salary at the time was $15 per hour. She testified further that, in a typical month, she brought in between 20 and 35 new cases and that, during the month she was diverted from her marketing duties, she brought in only ten new cases. On cross-examination, Quiroz admitted that, because Benevidez had been the firm's only personal injury attorney, it was inevitable that, if she were ever to leave the firm, someone would have to "tend to those files that she was no longer handling." On redirect, Quiroz agreed that the "real reason" she had to step in to help was that Benevidez had left without providing access to her email and the Dropbox files.

Cotto's other witness was Isaac Cotto. Mr. Cotto testified that, because Benevidez had effectively blocked the firm's access to her email, the Dropbox account, and the fax line, "we had to go, basically, manual labor and physically go through every single file to communicate with providers and clients." He testified that he asked Benevidez for the Dropbox information but she never gave it to him, and that ultimately his staff had to figure out the password "through trial and error." He also testified that five of the firm's personal injury clients left "within 24 hours" to go with Benevidez. As to the value of those clients' cases, Mr. Cotto testified that,

5

while he could not "give a dollar amount," a typical personal injury case "can range from $2,000 to $10,000"; he also opined that Benevidez "would not have taken a case of low value." Mr. Cotto also testified that the firm had suffered reputational damage with clients and referral sources. In addition, he testified that Quiroz and her administrative assistant were both diverted from their marketing duties to help triage the situation; that Quiroz was paid $3,000 per month and her assistant was paid $2,000 per month; and that, because of their inability to develop business during that time, "our signup numbers went down dramatically." Mr. Cotto testified that the firm had, up until the trial, spent between $7,000 and $8,000 on attorney fees.

On cross-examination, Mr. Cotto acknowledged that, because Benevidez and Lazano were the only staff handling personal injury cases at the firm, if they both left their employment for any reason, someone at the firm "would need to review all of the files in those cases, regardless." In addition, Mr. Cotto confirmed that his standard engagement letter for personal injury cases provided that, if the client terminated the firm's services before the case was resolved, the client would be obligated to reimburse the firm at the standard hourly rate for the hours spent on the case. Thus, he admitted, the firm was entitled to seek such compensation from any of the clients

6

who left the firm to engage Benevidez. He also admitted he did not know the "exact" value of the cases lost to Benevidez.

On further cross-examination, Mr. Cotto admitted that Benevidez had actually offered him the email and Dropbox account credentials within days after the suit was filed, but he declined to respond. In his words, because he had already retained counsel, "I couldn't communicate with her at that point."

After Mr. Cotto's testimony, a recess was taken before Benevidez began calling her witnesses. After the recess, the court announced its finding that Cotto had failed to meet its burden of proof and thus no damages were being awarded. Cotto's counsel asked for clarification, and the court stated that Cotto had not offered "any specifics about damages." Cotto's counsel noted that Cotto had offered testimony about the marketing director's expenses, but the court replied that Cotto never presented "a number [for] how much money the firm lost[,]" and that evidence amounted to mere "speculation." Before the parties were excused, Cotto's counsel noted that Cotto had intended to ask for punitive damages.

Two days after the hearing, the court entered its written order, in which it stated summarily, "The Plaintiff failed to prove damages as required by law."[6] This appeal followed.

## Discussion

On review of a judgment entered after a bench trial, this Court must uphold all findings of fact unless they are clearly erroneous, and due regard shall be given to the trial court's assessment of the credibility of witnesses. OCGA § 9-11-52 (a); *Moses v. Pennebaker*, 312 Ga. App. 623, 629 (2) (b) (719 SE2d 521) (2011). "The clearly erroneous test is the same as the any evidence rule. Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them." Id. (punctuation and footnote omitted). On the other hand, the court's judgment must be reversed "where it is apparent that it rests on erroneous reasoning or on an erroneous legal theory." *CBS, Inc. v. Anointed Hair Studio, Inc.*, 325 Ga. App. 560, 560-61 (754 SE2d 138) (2014) (citation and punctuation omitted).

Cotto's contentions on appeal break down into three main arguments: (1) that judged under the proper standard, the evidence Cotto offered was enough to support

---

[6] Neither party requested that the trial court enter specific findings of fact or conclusions of law, either before or after the entry of judgment. See OCGA § 9-11-52 (a), (c).

a reasonable calculation of damages; (2) that the default judgment "conclusively established" Benevidez's liability for punitive damages and attorney fees; and (3) that the trial court erred in denying Cotto's right to present closing argument at trial. We review each contention in turn.

1. We take first Cotto's contention that it proved damages under the proper standard. It is well-settled that, to recover damages as a result of another's wrongdoing, a party must offer proof sufficient to establish the amount of its losses. *Witty v. McNeal Agency, Inc.*, 239 Ga. App. 554, 562 (5) (521 SE2d 619) (1999). The claimant bears "the burden of showing the amount of the loss, and of showing it in such a way that the [trier] may calculate the amount from the figures furnished." Id. (citation and punctuation omitted). "An award of damages cannot be based on speculation, conjecture, or guesswork." *Mitchell v. Mitchell*, 274 Ga. 633, 634 (2) (555 SE2d 436) (2001). So, although an exact dollar figure need not be proven, *Witty*, 239 Ga. App. at 562 (5), the evidence must permit the trier of fact to calculate the amount of the loss "with a reasonable degree of certainty." *Legacy Academy, Inc. v. Doles-Smith Enters., Inc.*, 337 Ga. App. 575, 582 (1) (b) (789 SE2d 194) (2016) (citation and punctuation omitted). Accord *Molly Pitcher Canning Co. v. Central of Ga. Ry. Co.*, 149 Ga. App. 5, 11 (4) (253 SE2d 392) (1979) (noting that "[m]ere

9

difficulty" in fixing the amount of damages is not a "legal obstacle" to their recovery, so long as the evidence permits their calculation with "reasonable certainty").

The requirement to prove damages to a reasonable degree of certainty holds even when liability has been established. In other words, even if a defendant is found liable, an award of zero damages is authorized if the plaintiff fails to offer sufficiently specific or credible evidence to enable the calculation of damages with reasonable certainty. See, e.g., *Hart v. Walker*, 347 Ga. App. 582, 583-84 (1) (820 SE2d 206) (2018) (affirming trial court's award of zero damages, despite defendant's undisputed liability for wrongful eviction and other torts, where plaintiff had offered as evidence of damages only his own testimony and a single motel receipt); *Jaraysi v. Sebastian*, 318 Ga. App. 469, 477 (2) (733 SE2d 785) (2012), disapproved on other grounds by *George v. Hercules Real Estate Serv., Inc.*, 339 Ga. App. 843, 850 (2) (a) (ii) (795 SE2d 81) (2016) (affirming trial court's determination that, though landlord may have been entitled to recover repair costs, he had failed to present evidence showing the amount of those costs and was thus not entitled to any recovery); *Crawford v. Dammann*, 277 Ga. App. 442, 448-49 (3) (626 SE2d 632) (2006) (affirming trial court's award of zero damages, concluding that testimony about the "approximate"

10

amount of fees wrongfully assessed was "insufficient to prove the amount of [damages] to the requisite degree of specificity").

(a) Cotto contends that the trial court applied "an erroneous legal standard" in assessing its damages claims, but nothing in the court's oral pronouncement or its summary written order indicates that it applied any standard other than the reasonable-degree-of-certainty test. So this contention fails.

(b) Absent application of the wrong legal standard, the question becomes whether the trial court clearly erred in finding that the evidence of Cotto's alleged damages was insufficient to allow calculation of damages to a reasonable certainty. See OCGA § 9-11-52 (a); *Moses*, 312 Ga. App. at 629 (2) (b). Putting aside punitive damages and attorney fees, Cotto claims that it was entitled to four different categories of damages, which we will take one by one.

(i) Cotto first claims that it was entitled to damages for the five clients that left the firm to engage Benevidez. But Cotto admits it could offer no actual dollar amounts to represent the value of these clients' matters. Although Mr. Cotto testified that a typical personal injury case "can range from $2,000 to $10,000," Cotto offered no specific evidence about any of the five "stolen" cases, and thus no basis for making any reasonable estimate of their potential value. Moreover, it is unclear what

11

this $2,000 to $10,000 range even represents. But even assuming it refers to the firm's contingency fee on successful resolution of the case, and assuming each case would have been successfully resolved, this figure does not necessarily represent the firm's *profit* from that case, as it does not take into account any expenses the firm would have incurred in generating that fee. See *Legacy Academy, Inc. v. JLK, Inc.*, 330 Ga. App. 397, 404-05 (2) (765 SE2d 472) (2014) ("To sufficiently quantify lost profits, a finder of fact 'must be provided with figures establishing the business's projected revenue *as well as its projected expenses*.'" (emphasis supplied)).[7] In sum, the trial court's finding that Cotto failed to offer sufficient evidence to prove this item of damages was not clearly erroneous. See *Hart*, 347 Ga. App. at 583-84 (1); *Crawford*, 277 Ga. App. at 448-49 (3).

(ii) Next, Cotto contends that it was entitled to recover damages to cover the expenses it incurred in "restoring its client files and communications." Cotto cites evidence that Quiroz and her assistant were paid $3,000 and $2,000 per month,

---

[7] It is also hard to ignore the fact that Cotto failed to mitigate this item of damages by exercising its contractual right to seek hourly fees from the clients for its time spent on their matters. Although the duty to mitigate one's tort damages ostensibly applies only to negligence claims, see OCGA § 51-12-11, and thus this fact alone likely would not bar Cotto's recovery, its failure to pursue this obvious remedy is notable.

respectively, and Quiroz's testimony that she spent a month doing "office work" to help "reorganize . . . the operation of the law firm." Cotto claims it was entitled to recover $5,000.

It is true that "necessary expenses consequent upon an injury are a legitimate item in the estimate of damages." OCGA § 51-12-7. But the firm would have paid the salaries of Quiroz and her assistant whether they were helping "reorganize" after Benevidez's departure or performing their normal job duties. So the salaries did not represent any additional cost to the firm.[8] Cf. *Taft v. Taft*, 209 Ga. App. 499, 500 (3) (433 SE2d 667) (1993) (cost of hiring additional workers necessitated by plaintiff's personal injuries was properly awarded as necessary expenses under OCGA § 51-12-7). The trial court thus did not clearly err by concluding that Quiroz's and her assistant's salaries did not constitute damages of this kind. See *Hart*, 347 Ga. App. at 583-84 (1); *Crawford*, 277 Ga. App. at 448-49 (3).

---

[8] In addition, as Quiroz admitted, at least some of the work she performed was the inevitable transition-type work that would have been required even if Benevidez and Lazano had left the firm under normal circumstances. And while Cotto bemoans the extraordinary efforts it took to "recreate" the Dropbox files it could not access, we cannot overlook the undisputed fact that Cotto refused altogether to respond to Benevidez's offer, mere days after she left, to give him the Dropbox and other passwords—another conspicuous failure to mitigate the firm's damages.

13

(iii) Cotto also contends that it should have been awarded its losses attributable to the decline in new cases brought in during the month in which Quiroz was diverted from her marketing duties. Cotto asserts that it "lost $20,000, and likely much more, because of its lack of marketing for an entire month." This number comes from Quiroz's testimony that the firm effectively "lost" at least ten new cases—given its typical twenty to thirty-five monthly case originations, versus the ten cases it actually originated during the month in question—combined with Mr. Cotto's testimony valuing each personal injury case in the range of $2,000 to $10,000.

But we have already held that Mr. Cotto's testimony about the value of *actual* cases the firm lost to Benevidez was speculative, and that the trial court did not clearly err in concluding that it did not allow for calculation of those damages with reasonable certainty. The value of any *potential* cases the firm may have lost would be at least as speculative. For this reason, there was no clear error in the trial court's failure to award this item of damages. See *Hart*, 347 Ga. App. at 583-84 (1); *Crawford*, 277 Ga. App. at 448-49 (3).

(iv) Cotto also contends that the trial court erred by failing to award nominal damages. Again, we disagree.

14

Nominal damages are a form of "general damages," a term which refers to "those which the law *presumes* to flow from a tortious act." *MTW Inv. Co. v. Alcovy Props., Inc.*, 228 Ga. App. 206, 211 (1) (c) (491 SE2d 460) (1997) (emphasis in original). See OCGA § 51-12-4 (providing that "[d]amages are given as compensation for injury; . . . .[i]f an injury is small or the mitigating circumstances are strong, nominal damages only are given"). Because "[t]he law infers some damage from the invasion of a property right," the right may be vindicated through an award of nominal damages even if the damage cannot be quantified or established by proof. *Ga. Power Co. v. Womble*, 150 Ga. App. 28, 32 (3) (256 SE2d 640) (1979). See also *Williams v. Harris*, 207 Ga. 576, 578 (2) (63 SE2d 386) (1951) ("nominal damages are always allowed for any tortious invasion of a property right, though no actual damage results therefrom").

But just because nominal damages may be awarded does not mean they must be awarded. Although a trial court may not under these circumstances reject a claim for nominal damages as a matter of law, see, e.g., *Zhong v. PNC Bank, N.A.*, 345 Ga. App. 135, 142-43 (2) (c) (812 SE2d 514) (2018) (reversal was warranted where it was decided as a matter of law that nominal damages were unavailable without proof of actual damages); *Ambort v. Tarica*, 151 Ga. App. 97, 97 (1) (258 SE2d 755) (1979)

15

(reversing directed verdict on counterclaim because nominal damages were potentially recoverable), we have on at least two occasions held that a trier of fact may properly decline to award even nominal damages despite the defendant's liability having been definitively established. See *Hodson v. Whitworth*, 173 Ga. App. 863, 864 (1) (328 SE2d 753) (1985) (declining to reverse jury's zero damages award where liability was already established, noting that nominal damages were "authorized but not demanded"); *Corrosion Control, Inc. v. William Armstrong Smith Co.*, 157 Ga. App. 291, 292 (277 SE2d 287) (1981) (declining to reverse zero damages award after bench trial even though nominal damages would have been authorized). Cf. *Hooker v. Roberson*, 316 Ga. App. 345, 346 (2) (729 SE2d 484) (2012) (reversing where trial court sitting as trier of fact had failed to consider nominal damages because of its error in reconsidering defendant's liability after the entry of a default judgment). Thus, Cotto's contention that the trial court was required to award nominal damages here is unfounded.

Where nominal damages are authorized, the proper amount of the award is the prerogative of the trier of fact, whose determination is "not [to] be disturbed on appeal, except in extreme cases." *Ponce de Leon Condos. v. DiGirolamo*, 238 Ga. 188, 190 (3) (232 SE2d 62) (1977). Particularly given Cotto's undisputed failure to

16

mitigate its actual damages, we do not view this case as so "extreme" as to warrant disturbing the non-award of nominal damages.

2. Cotto next contends that Benevidez's default "conclusively established" its entitlement to punitive damages and attorney fees. We address each kind of damages in turn.

(a) A defendant in default "'is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged.'" *Cohran v. Carlin*, 254 Ga. 580, 585 (3) (331 SE2d 523) (1985). See also OCGA § 9-11-55 (a) (upon the entry of a default judgment, "every item and paragraph of the complaint or other original pleading" is deemed to be "supported by proper evidence," except those related to the amount of unliquidated damages). However, a default judgment does not operate as an admission of "allegations not well pled, forced inferences, or conclusions of law." *Zhong*, 345 Ga. App. at 139 (2) (b) (citation and punctuation omitted). In fact, the entry of a default judgment does not prevent a defendant from showing that the facts as deemed admitted do not give rise to any right of recovery. *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 498 (740

17

SE2d 413) (2013); *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 752-53 (1) (556 SE2d 517) (2001).

In light of these principles, it is "within the trial court's authority to award no punitive damages despite the fact that [a] default judgment established liability for them." *Wilson Welding Serv. v. Partee*, 234 Ga. App. 619, 620 (507 SE2d 168) (1998), overruled on other grounds by *Shields v. Gish*, 280 Ga. 556, 557 (1) (629 SE2d 244) (2006). So even when a defendant defaults on a complaint seeking punitive damages, the trial court is authorized to find that no punitive damages should be awarded based on the particular facts presented. This is because "the determination of *liability* for punitive damages and the *amount* of punitive damages are two separate issues." Id. (emphasis supplied). Thus, as with the other kinds of damages, we must consider the trial court's determination on punitive damages by reference to the facts established by the default and the evidence presented at the hearing.

Punitive damages are authorized in tort actions "in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). When punitive damages are to be awarded, the trier of fact is to assess "evidence . .

18

. regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case." OCGA § 51-12-5.1 (d) (2). The proper amount of punitive damages is "based on the enlightened conscience of the [trier of fact]," and on appeal, an award will not be disturbed "unless it is so excessive or inadequate as to shock the judicial conscience to the degree that a judgment entered thereon constitutes an error of law." *Wilson Welding Serv.*, 234 Ga. App. at 620 (citation and punctuation omitted). Accord *Avery v. Schneider as Next Friend*, 356 Ga. App. 304, 321 (5) (849 SE2d 1) (2020) (physical precedent only).

Under this highly deferential standard of review, we discern no error in the trial court's determination that punitive damages were not warranted here. The allegations in Cotto's verified complaint, which are deemed admitted by the default, show that when she left the firm, Benevidez changed the passwords for the Dropbox account and her email account; refused to respond to an email requesting these credentials; changed the contact information for Cotto's fax line, which cut off its access to clients and their insurers; formed a new firm that was soliciting Cotto's clients; and "effectuated the termination of two of [Cotto's] client relationships." Although there is no doubt that these acts were wrongful, we note that there are no specific averments in the complaint that Benevidez's conduct was willful, malicious, fraudulent, wanton,

19

oppressive, or consciously indifferent to the consequences, as would be required to justify an award under OCGA § 51-12-5.1 (b). Cf. *COMCAST Corp. v. Warren*, 286 Ga. App. 835, 842 (2) (650 SE2d 307) (2007) (allegations in complaint that defendant's conduct was committed "recklessly, wantonly, and with conscious disregard for the consequences" were sufficient to support punitive damages award after entry of default judgment). Moreover, Mr. Cotto's own testimony at the hearing revealed that Benevidez offered the Dropbox and email passwords to him within days of her resignation, a mitigating fact that the trial court might well have viewed as significantly undercutting the basis for an award of punitive damages. In addition, Cotto failed to offer any evidence, as OCGA § 51-12-5.1 (d) (2) required, on what amount would be "sufficient to deter, penalize, or punish" Benevidez for her actions. Under these circumstances, we cannot say that the zero-dollar punitive damages award was so "inadequate as to shock the judicial conscience." *Wilson Welding Serv.*, 234 Ga. App. at 620 (punctuation and footnote omitted).

(b) Our analysis of the attorney fee award, however, yields a different conclusion. OCGA § 13-6-11 allows the recovery of attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." As we have noted, "if a plaintiff in its

original complaint puts the defendant on notice that it is seeking attorney fees and expenses under OCGA § 13-6-11 as part of the relief prayed for in the case, and if a default judgment is subsequently entered against the defendant for failing to answer the complaint, then the plaintiff is entitled to an award of attorney fees and expenses as a matter of law[.]" *Water's Edge Plantation Homeowner's Ass'n, Inc. v. Reliford*, 315 Ga. App. 618, 620 (727 SE2d 234) (2012). Thus, it is reversible error to decline to award attorney fees where a default judgment has been entered on a complaint that specifically seeks attorney fees under OCGA § 13-6-11. *Fresh Floors, Inc. v. Forrest Cambridge Apts., LLC*, 257 Ga. App. 270, 271 (570 SE2d 590) (2002) (reversing and remanding where no attorney fees were awarded after default judgment was entered on a complaint that included a prayer for attorney fees).

Here, Cotto's complaint did include a specific claim for OCGA § 13-6-11 attorney fees. Thus, the trial court was not authorized to deny the recovery of fees altogether, and its judgment must be reversed on this issue and the case remanded for a determination of the proper amount to be awarded. See *Fresh Floors*, 257 Ga. App. at 271. We note that Cotto will bear the burden on remand to prove not only the amount of attorney fees expended in pursuing this matter but also the reasonableness of those fees. See *Gray v. King*, 270 Ga. App. 855, 857-58 (2) (b) (608 SE2d 320)

21

(2004) (noting that a plaintiff seeking attorney fees must prove "'the actual costs of the attorney and the reasonableness of those costs'").

3. Cotto lastly contends that the trial court committed reversible error by "denying" its request for closing argument. Assuming for the sake of argument that Cotto's right to make a closing argument was denied, "[a] new trial based on the denial of the right to . . . close argument is not warranted if there is an absence of any conflict in the evidence." *Gilmer Cty. Bd. of Tax Assessors v. Spence*, 309 Ga. App. 482, 483 (1) (b) (711 SE2d 51) (2011) (citations and punctuation omitted). There was clearly no conflict in the evidence here because the only evidence presented was Cotto's. Thus, the trial court's alleged denial of Cotto's right to present closing argument was not reversible error.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Dillard, P. J., and Mercier, J., concur.*

22