[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11310
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-03455-SCJ

SCHERITA DANIEL,

Plaintiff - Appellant,

versus

DEKALB COUNTY SCHOOL DISTRICT,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 23, 2014)

Before MARCUS, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Scherita Daniel appeals the district court's grant of summary judgment in favor of her employer, the Dekalb County School District, in her gender discrimination suit under Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e-2(a). Following a review of the record and the briefs, we affirm.

**I**

Ms. Daniel has been employed by the Dekalb County School District since 1987, when she was hired as a certified teacher. In 1999, Ms. Daniel was promoted to Assistant Principal of Columbia Middle School. In 2010, the School District posted a job listing for the position of Principal at Columbia High School. The minimum requirements for the position included a Master's degree, a valid Georgia Professional Standards Commission approved certification in educational leadership at a L-5 or NL-5 level, and a minimum of seven years of experience in education. Prior supervisory administrative experience was preferred. Ms. Daniel met the necessary qualifications for the position and applied.

According to the School District's Human Resources Officer, the selection process for a principal position begins when a job vacancy is posted for about five to ten days. The Area Assistant Superintendent then sets up a Resume Review Panel, comprised of about three School District employees, to review all of the candidates' applications, resumes, and cover letters. Panel members identify three to five qualified applicants to be interviewed. Chosen applicants are approved by

the Superintendent and then interviewed by the Interview Committee, which is comprised of about five School District employees. After conducting the interviews, each Committee member selects the top two candidates, based on his or her own objective reasons and criteria. After discussion, the Committee generally unanimously recommends the top two overall candidates for the position to the Superintendent. The Superintendent takes into consideration the Committee's recommendation and makes the appointment.

Here, the Resume Review Panel, after reviewing her application, did not select Ms. Daniel for an interview. Instead, they selected another female candidate and four male candidates. After interviewing the five candidates, the Interview Committee recommended Uras Agee (who was male) and Pamela Benford as the top candidates for the position.[1]

The Interim Superintendent Ramona Tyson appointed Mr. Agee to the position of Principal, because, according to Ms. Tyson, Mr. Agee was the

---

[1] While it is undisputed that Mr. Agee and Ms. Benford were the top two candidates, the parties disagree about whether Mr. Agee or Ms. Benford was the Interview Committee's top candidate. Ms. Daniel asserts it was Ms. Benford, and presents as evidence Ms. Zephora Roberts' statement that she was going to fight the Committee's recommendation of Ms. Benford, arguing that such a course of action would only be necessary if Ms. Benford were the top candidate. The School District asserts Mr. Agee was the top candidate. As evidence, the School District offers Interim Superintendent Ramona Tyson's deposition testimony and the affidavit of the School District's Chief Human Resources, Officer Tekshia Ward-Smith, who was present at the Committee meeting. Both stated that Mr. Agee was the Committee's top candidate. We agree with the district court's finding that Mr. Agee was the top candidate. While we draw all reasonable factual inferences in favor of Ms. Daniel at the summary judgment phase, we cannot make conclusions that are not supported by the evidence on the record, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986), or are simply conclusory allegations. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005).

Committee's top recommended candidate. Mr. Agee had two Georgia Educator Certificates L-5 and L-6, a Specialist degree in instructional leadership and supervision, experience with different school systems, a background in special education, academics, discipline, and testing, and, according to the Interview Committee, Mr. Agee understood the role, was well-read, knew about professional learning committees, and gave a strong interview.

At a point during the appointment process, Dr. Barbara Lee, a retired principal, had a conversation with Ms. Roberts, a board member of the School District. Ms. Roberts told Dr. Lee that Ms. Benford had been recommended for the principal position, but that she (Ms. Roberts) was going to fight that recommendation because she wanted a man in that position. Ms. Roberts was not a member of the Interview Committee or the Resume Review Panel. Ms. Roberts stated in her deposition that she did not remember making this statement and did nothing to influence the selection process. Everyone deposed denied that Ms. Roberts had any influence over the Resume Review Panel, the Interview Committee, or the Interim Superintendent.

When Ms. Daniel was not appointed principal, she filed suit. Ms. Daniel bases her gender discrimination claim on Ms. Roberts' statement to Dr. Lee and other alleged incidents of irregularity in the School District's previous principal appointment processes, which Ms. Daniel says demonstrate that the selection

4

process in her case was not independent, but rather "manipulated" and unworthy of any deference.

In her opposition to the School District's motion for summary judgment (and again on appeal), Ms. Daniel cites two examples of alleged irregularities in prior appointments. In the first example, a female member of the Interview Committee, Dr. Gwendolyn Bouie, opposed other Committee members' top candidate recommendation, suggesting to the Committee that it should interview additional candidates because they could find a better qualified individual for the position. The Committee heeded Dr. Bouie's advice, and a candidate from the second round was ultimately appointed principal. The second example Ms. Daniel cites to involves the non-inclusion of the former principal, Dr. Joanne Lottie, to the Resume Review Panel.  Dr. Lottie claims that she should have been on the Panel but was informed by the Assistant Superintendent that her services were not needed.  Subsequently, a female candidate, Sandra Nuñez, was appointed principal. Dr. Lottie believes that the School District could have found a more qualified individual for the position than Ms. Nuñez.

The district court granted the School District's motion for summary judgment, finding that Ms. Daniel had not established sufficient circumstantial evidence of discrimination because she failed to present evidence that the School District's nondiscriminatory reasons for hiring Mr. Agee were pretextual. Ms.

5

Daniel now appeals.  She argues the district court erred in failing to draw all reasonable factual inferences in her favor when it determined there was insufficient circumstantial evidence to allow a reasonable jury to conclude that the School District's proffered reasons for choosing Mr. Agee were pretextual.

## II

We review the district court's grant of summary judgment *de novo*, and "construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1199 (11th Cir. 2001). Summary judgment is appropriate when there is no genuine dispute as to any issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998). An issue is not genuine, however, if it is not supported by the evidence or if the evidence is not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Conclusory allegations or allegations that are unsupported by the record do not create genuine issues of material fact that withstand summary judgment. *See Fullman v. Graddick*, 789 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment."). *See also Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) ("[W]e resolve factual controversies in favor of the nonmoving party, but

6

*only* when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*.") (internal citation omitted).

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a claim under Title VII, Ms. Daniel must show by a preponderance of the evidence that the School District intentionally discriminated against her on the basis of gender either through direct evidence, statistical evidence showing a pattern or practice of discrimination, or circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003). *See also Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

## A

If all reasonable factual inferences are drawn in her favor, Ms. Daniel contends, there is sufficient circumstantial evidence to establish gender discrimination under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff can establish a prima facie case of discrimination, which then creates a rebuttable presumption that the employer acted illegally. *Wilson v. B/E Aerospace, Inc.*, 376

F.3d 1079, 1087 (11th Cir. 2004). The employer must then present a legitimate, nondiscriminatory reason for the employee's rejection. *Id.* at 1087-90. If the employer is able to do so, the burden shifts again, and the "plaintiff must establish that the proffered reasons for promoting another instead of the plaintiff were pretextual." *Id.* at 1090.

To establish a prima facie case of discrimination, the plaintiff must show that (1) she was a qualified member of a protected class; (2) that was qualified and applied for a vacant position; (3) that, despite qualifications, she was denied the position; and (4) that an individual outside the protected class was hired. *Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). *See also McDonnell Douglas*, 411 U.S. at 802.

Ms. Daniel established a prima facie case, as she is a member of a protected class, was qualified for the principal position, was rejected for the position, and a male was instead appointed. A prima facie case "creates a presumption that the employer unlawfully discriminated against the employee," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981), and the burden then shifts to the School District "to articulate a non-discriminatory reason for failing to promote." *Vessels*, 408 F.3d at 767-68.

An employer's burden to articulate a non-discriminatory reason is one of production and is "exceedingly light." *Perryman v. Johnson Prod. Co.*, 698 F.2d

8

1138, 1142 (11th Cir. 1983). "So long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it has discharged its burden of production." *Vessels*, 408 F.3d at 770, (*citing Burdine*, 450 U.S. at 258).

The School District explains that it hired Mr. Agee over Ms. Daniel because (1) the Resume Review Panel did not recommend Ms. Daniel, and (2) Mr. Agee was the more qualified candidate. In support, the School District cites to the fact that Mr. Agee holds an additional Georgia Educator Certificate, a Specialist's degree in instructional leadership and supervision, a Bachelor's degree in K-12 special education, and a Master's degree in instructional leadership and supervision, while Ms. Daniel holds only a Bachelor and Master's degree in Mathematics. These are legitimate, non-discriminatory reasons for the School District to have appointed Mr. Agee over Ms. Daniel. As such, the School District has satisfied its burden. *See Brooks v. Cnty. Com'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (summarily finding that employer's proffered reason that the candidate was selected over the plaintiff was a sufficient nondiscriminatory reason for the employer's decision).

The burden, therefore, switches back to Ms. Daniel to "introduce significantly probative evidence showing that the asserted reason[s] [are] merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993). The plaintiff can do so by either directly persuading the court that

a discriminatory reason was more likely what motivated the employer or indirectly showing that "the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). To establish an employer's reason is pretextual, the plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). We have held that "quarrelling with [the employer's] reason is not sufficient." *Wilson*, 376 F.3d at 1088.

Ms. Daniel argues that if all reasonable inferences are drawn in her favor, there is sufficient circumstantial evidence on the record to convince a reasonable jury that the School District's proffered explanations were pretext. Those reasons are unworthy of credence, she says, because the selection process is not independent, and Ms. Roberts' statement demonstrates that gender discrimination was the real reason she was not chosen for the position.

Although a plaintiff may establish pretext by showing "weakness . . . inconsistencies, . . . or contradictions in the employer's proffered legitimate reasons," to attack the employer's credibility, *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), the two instances Ms. Daniel cites as alleged irregularities in previous appointments do not demonstrate the Panel that reviewed her application was not independent or that the selection process was a "sham." First, Ms. Daniel fails to present evidence establishing that considering more

candidates or not selecting a principal to form part of a Panel are necessarily irregularities. Second, assuming that these were irregularities, Ms. Daniel fails to explain how these examples demonstrate the Panel that reviewed her application was not independent or was motivated by gender bias.

Ms. Daniel also asserts that, under the cat's paw theory, Ms. Roberts' statement (that she would fight Ms. Benford's recommendation because she wanted a man in the position) is attributable to the School District, and is evidence that gender discrimination was the real reason Mr. Agee was chosen for the position. The cat's paw theory establishes that a decision-maker can be liable even when he has no discriminatory animus if he is influenced by the conduct of a subordinate that is the product of such discriminatory animus. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011). In *Staub*, the United States Supreme Court held that an employer could be liable only if the subordinate supervisor performed an act motivated by animus that was intended to cause an adverse employment action and that act was the proximate cause for the employment action. *Id. See also Sims v. MVM, Inc.*, 704 F.3d 1327, 1334-35 n.6 (11th Cir. 2013).

Ms. Roberts' statement may demonstrate an intent to fight Ms. Benford's recommendation on the basis of gender, but Ms. Daniel fails to point to or identify any act committed by Ms. Roberts that caused an adverse employment action. Instead, Ms. Daniel asks us to infer that Ms. Roberts committed such a causal act

11

because Mr. Agee was ultimately chosen for the position instead of Ms. Benford. Although, we construe all facts and inferences in favor of the non-moving party, we cannot make inferences that are not supported by the record or accept as facts Ms. Daniel's conclusory allegations. *See Legg*, 428 F.3d at 1323. Absent any evidence indicating that Ms. Roberts influenced a decisionmaker in the appointment process, we cannot infer that the School District is liable under the cat's paw theory. *See Crawford v. Carroll*, 529 F.3d 961, 979 n.21 (11th Cir. 2008) (noting that the evidence in the record must support "the contention that [the subordinate supervisor] exercised undue influence over [the decisionmaker]" in order to succeed under the cat's paw theory). *See Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.20 (11th Cir. 1999) (refusing to entertain cat's paw argument when the employee failed to present any evidence that another employee with discriminatory intent had manipulated or influenced any decisionmakers).

Finally, Ms. Daniel fails to address the School District's explanation that Mr. Agee was simply the more candidate qualified for the position. "If [an] employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007), (*citing Chapman v. Al Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc)).  Ms. Roberts' statement of discriminatory animus even when taken at face value, does

not allow Ms. Daniel to establish pretext without rebutting each of the reasons proffered by the School District. *See Crawford*, 482 F.3d. at 1309 ("[Plaintiff] erroneously argues that evidence of a discriminatory animus allows [him] to establish pretext without rebutting each of the proffered reasons of the employer."). Because Ms. Daniel has failed to rebut each of the School District's proffered legitimate reasons, she cannot withstand summary judgment.[2]

## III

The district court's grant of summary judgment in favor of the School District is affirmed.

**AFFIRMED.**

---

[2] To the extent Ms. Daniel also argues that there is a "convincing mosaic of circumstantial evidence" that would allow a jury to infer intentional discrimination, *see Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), we disagree.