In the Supreme Court of Georgia

Decided:     September 14, 2015

S15A0833.  COCHRAN v. KENDRICK et al.

BENHAM, Justice.

Appellant Nancy Cochran was employed by appellee Steven Kendrick, who is the tax commissioner for Richmond County.  Appellee took office in 2009 after he was elected in 2008.  In 2010, appellee began reorganizing his office.  As part of the process, he eliminated ten positions, created three positions, and reclassified eight other positions. Two of the ten positions eliminated included appellant's position as Director of Motor Vehicles and Takiyah Douse's position as Deputy Director of Motor Vehicles.  Appellee created a new position of Division Manager of Motor Vehicles which required the person hired to have a bachelor's degree.  Appellant, who did not have a college degree, applied and was interviewed for this new position along with Douse. Appellee decided to hire Douse, who had a bachelor's and a master's degree.  Appellant did not apply for any other available positions in the

department and was terminated. At the time of her termination in May 2011, appellant had been employed by the county for 26 years.

Appellant, who is Caucasian, believed appellee, who is African-American, wrongfully terminated her because of her race when he decided to hire Douse, who is African-American. She also alleges appellant failed to follow the policies and procedures in place regarding layoffs and reorganization. Appellant brought a mandamus action to compel appellee[1] to follow these policies and procedures and raised claims under 42 USC §2000e, et seq. (Title VII), 42 USC §1981 (§1981), and 42 USC §1983 (§1983). Appellee moved for summary judgment and the trial court granted that motion, effectively denying mandamus relief for appellant. The trial court determined that appellant's race discrimination claims against appellee lacked merit and/or were barred by the doctrines of official immunity and sovereign immunity.

1. Appellant alleges the trial court erred when it denied mandamus relief. At the core of appellant's mandamus action is her contention that appellee's policies, which made a reference to the "Augusta, Georgia Employee

---

[1]Appellant also named Augusta-Richmond County as a defendant, but the county is not a part of this appeal.

2

Handbook," required appellee to take certain ministerial actions to retain appellant as an employee. The facts show that the "Rules, Regulations and Policies" created by appellee in June 2009[2] stated as follows:

> Although this office is not a part of the merit system of Augusta-Richmond County, the rules, regulations and policies herein [are] in keeping with established human resources requirements currently implemented by Augusta-Richmond County Government. For any subject not covered by these "Rules, Regulations and Policies," the Tax Commissioner's Office will refer to the Augusta, Georgia Employee Handbook for guidance.

The Rules, Regulations and Policies issued by appellee did not mention any policies or procedures related to reorganizations, layoffs, or reductions in force. The record shows, however, that Section 800.026 (5) of the Augusta-Richmond County Policies and Procedures Manual ("Augusta PPM"), which was adopted by the Augusta-Richmond County Commission on March 1, 2011,[3] defined layoffs and reductions in force as follows:

> Involuntary separation of an employee by Augusta, Georgia for shortage of funds or work, abolishment of the position, material changes in the duties or organization, or related reasons beyond the employee's control which do not reflect dissatisfaction with the

---

[2]Appellant acknowledged receipt of the Rules, Regulations and Policies on August 15, 2009.

[3]The record does not reflect what Augusta-Richmond County employment policies were in place as of 2009 when appellee took office and when he issued the Rules, Regulations and Policies to appellant and his other subordinates.

service of the employee. The duties previously performed by any laid-off employee may be reassigned to other employees holding positions in appropriate classes.

Section 800.027 (3) ("Order of Layoff") of the Augusta PPM further provided:

Should it become necessary to reduce the number of employees within a given class in any department, such employees shall be laid off on the basis of the following three factors to be weighted equally - length of service in class, length of service with the government, and performance evaluations for the last three years.

Appellant contends that because she met each of the three factors mentioned in Section 800.027 (3), appellee had a duty to retain her as an employee. We disagree.

In Schrenko v. DeKalb County School Dist., 276 Ga. 786 (3) (582 SE2d 109) (2003), this Court set forth the scope of mandamus relief:

Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy. It is a discretionary remedy that courts may grant only when the petitioner has a clear legal right to the relief sought or the public official has committed a gross abuse of discretion. In general, mandamus relief is not available to compel officials to follow a general course of conduct, perform a discretionary act, or undo a past act.

Here, appellant has failed to show that appellee had a "clear legal duty" to maintain her as an employee. The policies issued by appellee stated that it

4

would use the "Augusta Georgia Employee Handbook" for "guidance." Appellee correctly notes that the handbook referenced in 2009 is not in the record. Even if, as appellant alleges, the language in the March 2011 Augusta PPM is the same as the language applied to reorganizations and reductions in force in 2009, nowhere in the Rules, Regulations, and Policies issued by appellee does appellee purport to incorporate, adopt, or adhere to any Augusta, Georgia policy verbatim. Rather, in the Rules, Regulations and Policies, appellee stated he would only refer to such policies for guidance.

There is no evidence showing that appellant was ever a merit system employee with a vested interest in her continued employment with the tax commissioner. Unlike appellant contends, OCGA § 47-2-292 (a),[4] which concerns the Employees' Retirement System of Georgia, does not support a protected right of continued employment. Likewise, there is no evidence showing that appellee promulgated a merit system of personnel administration wherein appellant had a continued right of employment after her position was

[4]That section provides:
All tax commissioners, tax collectors, and tax receivers and employees in their offices shall be subject to a merit system of personnel administration, as promulgated by each such office, under which all such officials and employees shall perform services on the basis of merit, fitness, and efficiency.

5

eliminated and after interviewing for and being rejected for a newly created position. Appellee did not take the steps necessary for his employees to be included in Augusta-Richmond County's merit system. See OCGA § 36-1-21 (b). In fact, in 1956, when the General Assembly consolidated the roles of tax collector and tax receiver into the office of the Richmond County Tax Commissioner, it provided that the county tax commissioner has no obligation to keep positions filled in his office (except the position of chief deputy commissioner) when, in his judgment, such employee may be "advantageously dispensed with." Ga. Laws 1956, p. 2362, § 20. This same language appears in the Augusta Charter which was re-adopted in 2007. See Section 7-52.[5] Accordingly, appellee had no clear legal duty to retain appellee simply because she met the factors set forth in Section 800.027 (3) of the Augusta PPM. Hence, the trial court did not err when it denied appellant's request for a writ of mandamus.

---

[5]Section 7-52 of the Augusta Charter provides:
There shall be no obligation upon the tax commissioner to keep filled all such positions in his respective offices when, in his judgment, any such deputy, clerk or assistant, or any other employee, may be advantageously dispensed with, and such tax commissioner may from time to time fill, or fail to fill, any such positions, with the exception of the position of chief deputy commissioner, which shall be filled in accordance with section 36 of this act.

2. Appellant alleges the trial court erred when it granted summary judgment to appellee on her claim that she was discriminated against because of her race in violation of federal law. An appellate court reviews the grant or denial of summary judgment *de novo*, viewing the evidence in a light most favorable to the non-moving party. See Giles v. Swimmer, 290 Ga. 650 (1) (725 SE2d 220) (2012).

> To demonstrate a prima facie case of Title VII discrimination, [appellant] must show the following: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to do the job; and (4) her employer treated similarly situated employees outside of her protected class more favorably. [Cit.] Once [appellant] establishes a prima facie case of discrimination, under the McDonnell Douglas framework, the burden shifts to [appellee] to articulate a non-discriminatory reason for [his] actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 [(93 SCt 1817, 36 LE2d 668)] (1973). Assuming [appellee] is able to offer a non-discriminatory reason, the burden again shifts to [appellant] to show that the non-discriminatory reason offered by [appellee] was a pretext for discrimination. Id.[6]

McMillan v. Fulton County Government, 349 Fed. Appx. 440, 442 (11th Cir. 2009). To show pretext, appellant must

> present sufficient evidence to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real

---

[6]This analysis also applies to appellant's §1981 and §1983 claims because the underlying facts are the same as her Title VII claim. See Crawford v. Carroll, 529 F3d 961, 970 (11th Cir. 2008).

7

> reasons for the adverse employment decision. [Cit.] Conclusory allegations, without more, are insufficient to show pretext. [Cit.] Instead, the plaintiff must meet the proffered reason head on and rebut it. [Cit.] Unsupported assertions are not evidence of pretext.

(Punctuation omitted.) Gerard v. Board of Regents of State of Ga., 324 Fed Appx. 818, 826 (11th Cir. 2009).

Assuming without deciding that appellant established a *prima facie* case of race discrimination, the trial court correctly decided that she was unable to meet her ultimate burden under the burden-shifting framework established for circumstantial cases of race discrimination. Here, appellee eliminated both appellant's and Douse's positions and created a new position that was a combination of the two eliminated positions plus additional duties that had not been performed by either woman. Appellee testified that the reason for the reorganization was to make the office more efficient. This action constituted a legitimate non-discriminatory reason for the reorganization, as well as any accompanying adverse employment decisions which resulted therefrom. See Robinson v. Time Warner, Inc. 92 FSupp.2d 318 (III) (A) (S.D.N.Y. 2000); Jones v. WDAS FM/AM Radio Stations, 74 FSupp.2d 455 (3) (E.D. Pa. 1999).

All tax commission employees whose positions were eliminated as a result of the reorganization had the opportunity to apply for other open positions within the tax commissioner's office. Appellant only applied for the one newly created position, although she testified she knew she could apply for other positions.[7] Ultimately, appellee selected Douse for the position because, among other qualifications, Douse had a bachelor's degree and a master's degree in business, whereas appellant only had a high school equivalency. Since education level is a legitimate, non-discriminatory reason to select one employee over another, appellee met his burden under the McDonnell Douglas framework. See Daniel v. DeKalb County School Dist., 600 Fed. Appx. 632, 636 (11th Cir. 2014).

As proof that appellee's asserted legitimate non-discriminatory reasons for his actions are pretext, appellant contends that appellee was "generally motivated by race." As examples of this alleged race-based animus, appellant states in her brief that appellee ignored her managerial input, excluded her from

---

[7]The record indicates appellant, along with other employees, was notified by email about the available positions for which she could apply.

"important" managerial meetings,[8] and "punished" her with little or no evidence. During her deposition, appellant gave the following examples of discrimination by appellee: during an office visit before he was sworn in as tax commissioner, appellee was not congenial with appellant and other white employees; in his second week as tax commissioner, appellee sent appellant home without pay upon receiving reports from three employees that she had allegedly made derogatory comments about appellee;[9] appellee gave Douse an award and announced that she was the "go to" person in the office; on one occasion, appellee chastised appellant for returning late from lunch; and, on one occasion, appellee chastised appellant for leaving work early without his permission. These events, even when viewed in a light most favorable to appellant as the nonmoving party on summary judgment, do not support a claim of race discrimination. "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." (Citations and quotations omitted.) <u>Davis v. Town of Lake Park, Fla.</u>, 245 F3d 1232, 1239 (11th Cir.

---

[8]Appellant's citations to the record do not support her allegation that she was excluded from important managerial meetings or her allegation that her managerial input was ignored.

[9]This is the incident for which appellant contends in her brief that she was "punished" with little or no evidence.

2001). Although it is clear that appellant did not like how she was, in her words, "handled" by appellee, there is no evidence other than appellant's own supposition that appellee was motivated by racial bias. "Even if her interpretation of these so-called [racially-motivated] actions somehow implicated [race] discrimination, [appellant's] speculation about [appellee's] motive [is] insufficient to establish pretext: 'Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions or rumors; discrimination law would be unmanageable if disgruntled employees could defeat summary judgment by speculating about the defendant's motives.'" (Citation omitted.) Lewis-Webb v. Qualico Steel Co., Inc., 929 FSupp 385, 392 (M.D. Ala. 1996). The trial court did not err when it granted appellee's summary judgment motion in regard to appellant's federal claims of race discrimination.

3. Having found the trial court correctly decided that appellant failed to prevail on her federal race discrimination claims on the merits and because the same set of facts were applicable under Title VII, §1981 and §1983, we need not reach the propriety of the trial court's rulings concerning sovereign immunity and/or qualified immunity. See, e.g., Shryer v. University of Texas

Southwestern Medical Center at Dallas, 587 Fed. Appx. 151, n.2 (5th Cir. 2014);

Narey v. Dean, 32 F3d 1521, n.1 (11th Cir. 1994).

Judgment affirmed.  All the Justices concur.