*647 McMlLLIAN, Judge,
dissenting.
Because the majority conflates the burden of proof in reviewing a defendant’s motion for summary judgment and in so doing, ignores pertinent and on point case law, I must respectfully dissent.
As an initial matter, even if we assume for purposes of summary judgment that issues of fact exist as to whether the Appellees were negligent in mislabeling the circuits and as a result Miller failed to cut the electricity to the Junction Box,[13] the Appellants have failed to show that any such negligence was the proximate cause of Miller’s injuries because Miller undisputedly knew that the Junction Box contained a potential danger from an energized source of electricity and yet negligently approached the Junction Box.
Miller knew that the Junction Box was live because he had witnessed Nipper being shocked, was told by Nipper that he had been shocked, and watched Nipper descend the ladder after being shocked. Miller did not have to know with specificity what had caused the electrical shock, i.e., that the circuit itself was live; rather, it is enough that he knew that potential danger existed from a source of live electricity in the box.[14] In fact, the Appellants’ expert acknowledged in his deposition that if Miller took Nipper’s word “at face value,” he should have known that something in the box was energized and that his attempt to deenergize the circuit may not have worked.
Not only did Nipper tell Miller that the Junction Box contained live current, but he also suggested that they check the circuits. Tragically, Miller declined to do so. Instead, Miller decided to climb the ladder to check the Junction Box, the same ladder that Nipper had just descended to avoid being electrocuted. The majority asserts that a question of fact exists as to whether Miller was properly using a tic tracer or voltage meter to check the Junction Box, but that is error as all the evidence is to the contrary. Nipper, the only eyewitness, did not use a tic tracer before working on the box and did not use a tic tracer to test the wires after he was shocked. Nipper also said that he did not see Miller use such a device, although he stated that Miller “may” have had one in his pocket. Also, no tic tracer was found on the scene after Miller was electrocuted.
*648 Although the Appellants argue that Miller’s statement that Nipper had been hit by a neutral line demonstrates that he used a tic tracer, such an interpretation is pure conjecture. The Appellants’ expert opined that the only way Miller could have ascertained that information was with a voltage meter, but the expert can only guess that Miller based his statement on empirical evidence gathered through testing the lines and not on some other factor, such as his stated belief that he had cut the power to the box, or whether it was just a guess on Miller’s part. Presented with the evidence of record, a jury also would be left to speculate regarding the basis for Miller’s statement. It is well settled that “[gjuesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.” (Citation and punctuation omitted.) Hill v. Jackson , 336 Ga. App. 679, 681 (783 SE2d 719) (2016). Cf. Cochran v. Kendrick, 297 Ga. 655, 660 (2) (778 SE2d 1) (2015) (speculation about motive behind defendant’s actions insufficient to defeat summary judgment). There is simply no evidence showing whether Miller tested the lines with a tic tracer or any other similar device.
This Court has repeatedly found that summary judgment for the defendants is appropriate in similar circumstances where the plaintiff was aware of a potential risk from live electricity, yet failed to exercise reasonable care for his own safety or through his own actions assumed the risk of potential danger. As the Court has explained, “[a] person cannot undertake to do what is obviously a dangerous thing and at the same time avoid the responsibility for the self-assumed risk.” (Citation and punctuation omitted.) Brown v. Southern Bell Tel. & Tel. Co., 209 Ga. App. 99, 101 (2) (432 SE2d 675) (1993) (holding that plaintiff’s claims barred as a matter of law where he attempted to free a power line from his truck even though he knew it might carry voltage). Thus, for example, in Southern Orchard Supply v. Boyer, 221 Ga. App. 626, 627-28 (472 SE2d 157) (1996), this Court found that a pipe installer’s actions in lifting an irrigation pipe above his head near high voltage wires despite his knowledge of the danger was the proximate cause of his injuries. See also Callaway v. Crown Crafts, Inc., 223 Ga. App. 297, 298-99 (2) (477 SE2d 435) (1996) (physical precedent only) (metal company worker, who was “keenly aware” of the dangers of working around high voltage lines, yet chose to lower a metal gutter near those lines, eschewing other means for doing the job, failed to exercise ordinary care).
Even in cases where jury questions existed as to whether a defendant was negligent in installing or maintaining the source of the electrical current, this Court has found that summary judgment is appropriate where the undisputed evidence demonstrated that the *649 injured party’s own negligence was the proximate cause of his injuries and the defendant could not foresee that the injured party would fail to exercise the appropriate care for his own safety or would assume the risk of a known danger. In Leonardson v. Ga. Power Co., 210 Ga. App. 574, 576 (436 SE2d 690) (1993),[15] for example, an experienced tree service worker suffered fatal injuries when he was electrocuted after he came into contact with a Georgia Power Company (“GPC”) power line while he was up in a tree to begin the process of its removal. 210 Ga. App. at 574. The plaintiffs argued that GPC was negligent in maintaining its power line too close to the tree in violation of the National Electrical Safety Code. Id. at 575. The deceased’s co-worker testified that the deceased had seen the line and knew it was an uncovered power line, and they had discussed whether they had enough room to remove the tree without contacting GPC regarding the line, as they had done on past jobs. Id. This Court found as a matter of law that “even if Georgia Power breached a duty with respect to placement of the power line, [the deceased’s] death was proximately caused by his own actions, rather than any breach by Georgia Power.” Id. at 576. The Court further found that
[i]t was not foreseeable to Georgia Power that an experienced tree climber and cutter, working in a profession where it is common to encounter the danger of power lines on tree removal jobs, would proceed in this case to attempt removal of the tree, despite the close proximity of an obvious and visible power line.
Id. at 578. See also Beamon v. Ga. Power Co., 199 Ga. App. 309, 312 (404 SE2d 463) (1991) (electrical lineman’s own actions in failing to follow safety procedures while repositioning a transformer on a utility pole precluded his recovery despite the existence of jury issues as to whether GPC had negligently mounted the transformer to the pole); Ga. Power Co. v. Purser, 152 Ga. App. 181, 182 (262 SE2d 473) (1979) (surveying company employee’s own contributory negligence in holding surveying rod between power lines precluded recovery even if GPC was negligent in the placement of the lines).[16]
Therefore, even assuming for purposes of summary judgment that the Appellees negligently mislabeled the Junction Box and the Panel, I would find as a matter of law that Miller’s own actions were *650 the sole proximate cause of his injuries. “A defendant who pierces the plaintiff’s pleadings by showing that under any theory of recovery one essential element is lacking is entitled to summary judgment despite any remaining issues of fact with respect to other essential elements.” (Citation and punctuation omitted.) Leonardson, 210 Ga. App. at 576. Here, the record contains no evidence showing that any actions by the Appellees were the proximate cause of Miller’s injuries; rather, Miller had the last, best chance to avoid injury, and no evidence exists that he took steps to do so. Moreover, I would find that it was not foreseeable to the Appellees that a trained electrical worker would make contact with the Junction Box without taking the requisite precautions under the circumstances, i.e., with knowledge that his co-worker had received a shock from the box moments before and believed the box to be energized. See id. at 577.
Decided November 18, 2016
The Summerville Firm, J. Darren Summerville, Angela R. Fox; Law & Moran, Peter A. Law, E. Michael Moran, for appellants.
Although the majority asserts that the Appellees bear the burden of proof on summary judgment to show that Miller failed to take proper precautions to support their affirmative defenses of contributory negligence and assumption of risk, the Appellants bore the burden of showing that the Appellees’ actions were the proximate cause of Miller’s injuries, and they have failed to do so. A mislabeling of circuits may have led Miller to assume that he had switched off the proper circuit when he had, in fact, not done so, but Miller had direct notice that despite his actions in flipping the circuit, the Junction Box was live. Thus, the Appellants cannot show that any negligence by the Appellees was the cause of Miller’s injury. Without resorting to speculation or conjecture, a jury will not be able to determine what actions Miller took or that he took the proper precautions. Under these circumstances, summary judgment is required. See Lau’s Corp., Inc. v. Haskins, 261 Ga. 491, 491 (405 SE2d 474) (1991) (defendant entitled to summary judgment by showing that there is no evidence sufficient to create a jury issue on an essential element of plaintiff’s claim); Leonardson, 210 Ga. App. at 575 (defendant entitled to summary judgment in wrongful death action where deceased tree worker, who knew risks of electricity, was electrocuted and record was silent as to his actions that led to contact with electrical line).
Accordingly, I believe that the Appellees were entitled to summary judgment on the Appellants’ claims.
I am authorized to state that Judge Branch joins in this dissent.
*651 Troutman Sanders, Daniel S. Reinhardt, Alan W. Bakowski, Courtney E. Ferrell; Goodman, McGuffey, Lindsey & Johnson, Edward H. Lindsey, Jr., Michael A. Melonakos, for appellees.

 Turner Properties employees found no signs that Miller followed Occupational Safety and Health Administration (“OSHA”) regulations requiring that electrical workers follow a lockout/tagout procedure before approaching the box. OSHA later charged Gallagher with violating its regulations in this regard. See Kull v. Six Flags Over Ga. II, L.P., 264 Ga. App. 715, 717-18 (592 SE2d 143) (2003) (failure to follow mandatory OSHA regulations may amount to negligence per se).

 Moreover, I note that the Appellants’ expert testified that he knew of no source of power to the Junction Box other than that controlled by the circuit breakers.

 This case was superseded by statute on other grounds, as recognized in Preston v. Ga. Power Co., 277 Ga. App. 449, 455 (489 SE2d 573) (1997).

 Other than briefly considering Beamon in a footnote, the majority does not attempt to address or distinguish these cases.